## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VITO J. PERRONE,<br><br>    Plaintiff,<br><br> v.<br><br>CITY OF EASTHAMPTON; CITY OF EASTHAMPTON SCHOOL COMMITTEE; NICOLE LACHAPELLE, Individually, and in their Official Capacity as the Mayor of the City of Easthampton and a Member of the City of Easthampton School Committee; CYNTHIA KWIECINSKI, Individually, and in her Official Capacity as the Chairperson and a Member of the City of Easthampton School Committee; MEGAN HARVEY, Individually, and in her Official Capacity as the Secretary and a Member of the City of Easthampton School Committee; BENJAMIN HERSEY, Individually, and in his Official Capacity as a Member of the City of Easthampton School Committee; and MARIN GOLDSTEIN, Individually, and in his Official Capacity as a Member of the City of Easthampton School Committee,<br><br>    Defendants. | Civil Action No.: _____ |

## COMPLAINT AND JURY DEMAND

### I.  INTRODUCTION

1.  In the United States of America and Massachusetts, government employers must not take their employees' property – including by rescinding their employment contracts – without due process of law.  *See generally* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I.

2.  This rule protects government employees from being "deprived of [their] property interest without the minimum amount of process that [is] due under the Constitution [of the

1

United States including] '*some kind of hearing*' and '*some pretermination opportunity to respond*.'" *Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 102 (1st Cir. 2002) (quoting *Cleveland Bd. of Edu. v Loudermill*, 470 U.S. 532, 542 (1985)) (emphasis added); *see also Kirschling v. Lake Fores*t *School District*, 687 F.Supp. 927, 932-935 (D. Del. 1988) (holding that a public school principal candidate stated a claim under 42 U.S.C. § 1983 against a school district and school board members for terminating his two-year employment contract without being provided notice of the school board's reason(s) for terminating his employment contract and without providing the candidate with a pretermination hearing).

3.     Here, Defendants, including five current and former City of Easthampton School Committee Members, "rescinded" Plaintiff Vito J. Perrone's contract for employment as Superintendent of Easthampton Public Schools, claiming that he committed an "unprofessional microaggression" by addressing two women, including the Chairperson of the School Committee, as "Ladies." Defendants "rescinded" Plaintiff's employment contract before informing him of their reasons for doing so, and also failed to provide him with a pretermination hearing before "rescinding" his employment contract.

4.     Defendants "rescinded" their employment contract with Plaintiff without showing that he was in material breach of the employment contract – a prerequisite to contract rescission under Massachusetts law. *See Runkle v. Burrage*, 88 N.E. 573, 577 (Mass. 1909) ("nothing less than conduct that amounts to an abrogation of the contract, or that goes to the essence of it, or takes away its foundation, can be made a ground for rescission of it by the other party.").

5.     As a result of Defendants' unconstitutional and illegal conduct, Plaintiff has suffered lost wages, lost employment benefits, lost retirement benefits, loss of future employment opportunities, emotional distress, personal humiliation, damage to his personal and professional reputation, and incurred attorneys' fees and litigation costs.

## II.    PARTIES

6.      Defendant, City of Easthampton ("Defendant City of Easthampton" or "Easthampton"), is a municipality organized in the Commonwealth of Massachusetts. Easthampton's Municipal Building is located at 50 Payson Avenue, Easthampton, Hampshire County, MA 01027.

7.      Defendant, City of Easthampton School Committee ("Defendant City of Easthampton School Committee," the "School Committee," or the "Committee"), is a municipal governmental body comprised of seven elected individuals that is organized to oversee and administer Easthampton Public Schools.  The School Committee's office is located at 50 Payson Avenue, Easthampton, Hampshire County, MA 01027.

8.      Defendant, Nicole LaChapelle ("Defendant LaChapelle"), individually, and in their official capacity as the Mayor of the City of Easthampton and a Member of the City of Easthampton School Committee, is an individual residing in Easthampton, Hampshire County, MA.  Defendant LaChapelle's office is located at 50 Payson Avenue, Easthampton, Hampshire County, MA 01027.  At all times relevant, Defendant LaChapelle served as the Mayor of the City of Easthampton and as a Member of the City of Easthampton School Committee.

9.      Defendant, Cynthia Kwiecinski ("Defendant Kwiecinski," the "Chair," "Chair Kwiecinski," or the "Chairperson"), individually, and in her official capacity as the Chairperson and a Member of the City of Easthampton School Committee, is an individual residing in Easthampton, Hampshire County, MA.  At all times relevant, Defendant Kwiecinski served as the Chairperson and a Member of the City of Easthampton School Committee.

10.     Defendant, Dr. Megan Harvey ("Defendant Harvey"), individually, and in her official capacity as the Secretary and a Member of the City of Easthampton School Committee, is an individual residing in Easthampton, Hampshire County, MA.  At all times relevant,

Defendant Harvey served as the Secretary and a Member of the City of Easthampton School Committee.

11.     Defendant, Benjamin Hersey ("Defendant Hersey"), individually, and in his official capacity as a Member of the City of Easthampton School Committee, is an individual residing in Easthampton, Hampshire County, MA.  At all times relevant, Defendant Hersey served as a Member of the City of Easthampton School Committee.

12.     Defendant, Marin Goldstein ("Defendant Goldstein"), individually, and in his official capacity as a Member of the City of Easthampton School Committee, is an individual residing in Easthampton, Hampshire County, MA.  At all times relevant, Defendant Goldstein served as a Member of the City of Easthampton School Committee.

13.     Plaintiff, Dr. Vito J. Perrone ("Plaintiff" or "Dr. Perrone"), is an adult resident of Hampshire County, MA.

### III.    JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331;1337, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court has jurisdiction over Plaintiff's claims brought pursuant to 42 U.S.C. § 1983.

16.     Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391. All events or omissions giving rise to the claims in this Complaint occurred in the Commonwealth of Massachusetts.

### IV.    LEGAL PRINCIPLES

17.     Government employers must honor the employment contracts they make with their employees and may not terminate their employees' employment contracts without providing a notice of the reason(s) for the termination of the contracts, as well as a meaningful

opportunity to respond, typically in the form of a pretermination hearing.  *See generally* U.S.

Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I;

*see also Wojcik*, 300 F.3d at 102 (quoting *Cleveland Bd. of Educ.*, 470 U.S. at 542); *Kirschling*,

687 F.Supp. at 932-935.

18.    Terminating an employment contract without prior notice of the reason(s) for

terminating the contract and/or without a pretermination hearing violates the Due Process Clause

of the Fourteenth Amendment to the United States Constitution; 42 U.S.C. § 1983, Article X of

the Massachusetts Declaration of Rights, M.G.L. c. 12 § 11H, and M.G.L. c. 12 § 11I.  *See* U.S.

Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I;

*see also Mard v. Town of Amherst*, 350 F.3d 184, 188-189 (1st Cir. 2003) (citing *Cleveland Bd.

of Educ.*, 470 U.S. at 538-541).  "A protected property interest in employment can be created

prior to the actual commencement of employment."  *Kirschling*, 687 F. Supp. at 933 (citing

*Stana v. Sch. Dist. of Pittsburgh*, 775 F.2d 122, 125-127 (3d Cir. 1985)).[1]

19.    Contracts may not be rescinded without proof that the non-rescinding party first

materially breached the contract.  *See Runkle*, 88 N.E. at 577 ("nothing less than conduct that

amounts to an abrogation of the contract, or that goes to the essence of it, or takes away its

foundation, can be made a ground for rescission of it by the other party.").

20.    Governmental entities and government officials, acting under "color of law," are

liable for damages when they violate an employee's civil rights, including those rights afforded

to those employees by the Due Process Clause of the Fourteenth Amendment to the United

States Constitution.  *See* U.S. Cont. amend. XIV § 1; 42 U.S.C. § 1983; *see also* Mass. Const. pt.

---

[1]  The First Circuit cited *Stana* approvingly in a parenthetical for the proposition that a "public school teacher had
[a] property interest in her position on a list determining eligibility for promotions and transfers."  *Clukey v. Town
of Camden*, 717 F.3d 52, 57 (1st Cir. 2013) (citing *Stana*, 775 F.2d at 125-127).

1, art. X; M.G.L. c. 12 §§ 11H; 11I (granting individuals a private right of action to file suit for deprivation of civil rights conferred by the United States Constitution and/or the Massachusetts Declaration of Rights, without 42 U.S.C. § 1983's requirement that a defendant acted under color of law).

## V.    FACTUAL ALLEGATIONS

21.    On December 13, 2022, then Superintendent of Easthampton Public Schools ("Superintendent" or the "Superintendent position"), Dr. Allison LeClair ("Dr. LeClair"), announced her intention to retire, effective June 30, 2023.

22.    In response to Dr. LeClair's retirement announcement, Defendant Easthampton School Committee created the Superintendent Search Committee, comprised of Easthampton municipal employees, teachers, school administrators, and parents, to commence the process for hiring the next Superintendent.

23.    On or about January 13, 2023, Plaintiff applied for the Superintendent position.

24.    At the time Plaintiff applied for the Superintendent position, Plaintiff was serving as the Interim Superintendent of West Springfield Public Schools for the 2022-2023 academic year.

25.    In early February 2023, the Superintendent Search Committee interviewed Plaintiff as a semi-finalist candidate.

26.    On March 23, 2023, the School Committee interviewed Plaintiff as a finalist candidate.

27.    On March 23, 2023, at the conclusion of Plaintiff's interview, the School Committee deliberated and voted to offer Plaintiff the Superintendent position.

28.    At approximately midnight on March 24, 2023, Defendant Kwiecinski, on behalf of the School Committee, offered Plaintiff the Superintendent position via telephone.  The

School Committee's offer was for a three-year employment contract, with a salary in the amount of $151,000.00 per year.

29.    Plaintiff verbally accepted the School Committee's offer, which included the annual salary for the position ($151,000.00), as well as the term of the contract (three years), during the telephone call with Defendant Kwiecinski.

30.    Defendant Kwiecinski explained to Plaintiff that the School Committee would send him the written Superintendent of Schools Employment Contract (attached hereto as Exhibit "A"), and that the School Committee and Dr. Perrone would negotiate the minor details of his employment contract on March 30, 2023.

31.    On March 29, 2023, Executive Assistant to the Superintendent/School Committee and Personnel Manager, Suzanne (Sue) Colby ("Ms. Colby"), sent Plaintiff the employment contract via email.

32.    The employment contract identified the parties.  *See* Exhibit A at p. 1.  The employment contract stated that Plaintiff would assume the position of Superintendent.  *Id.* at ¶ 1.  The employment contract stated the duration of the contract – three years.  *Id.* at ¶ 2(a).  The employment contract stated the applicable annual salary – $151,000.00.  *Id.* at ¶ 3.  The employment contract stated the duties that Plaintiff would perform.  *Id.* at ¶ 6.  In addition, the employment contract stated that Dr. Perrone could be terminated prior to the end of the contract term only if his termination was "for cause."  *Id.* at ¶ 5.

33.    On March 29, 2023, after reviewing the employment contract, Plaintiff sent an email to Defendant Kwiecinski, as Chairperson of the School Committee, and Ms. Colby which reads, in relevant part:

Ladies,

Good evening!  I perused the [employment] contract and have three requests:

1. Bullet 3 (compensation): I was told that the $151,000 initial salary was non-negotiable, and I understand the rationale behind the decision, so I request that the last sentence of the bullet read as follows:  The annual salary for fiscal years 2025 and 2026 shall be negotiated, but shall not be less than a cost of living adjustment (COLA) of 3% and 3% respectively for the final two years of the contract.

2. Bullet 12 (Annual Vacation Days): Instead of 26 vacation days, I request 30 vacation days effective July 1 of each contract year with all other contract language remaining the same.

3. Bullet 13 (Sick days): I worked for six years in the EPS [Easthampton Public Schools] and accrued a reasonable number of days in sick time.  I request 40 sick days effective July 1 of the FIRST year of my contract and 18 days effective July 1 of each contract year thereafter with all other contract language remaining the same.

**All other language and provisions are acceptable to me.**  Thank you!

Vito

(emphasis added).

34.    Through this email, Plaintiff accepted all the material terms of the employment contract (his position, duties, salary, duration of employment, and the "for cause" termination provision), and requested additional terms without conditioning his acceptance of the material terms upon the School Committee's acceptance of the additional requested terms.

35.    On March 30, 2023, the School Committee invited Plaintiff to attend an Executive Session meeting, which was conducted via Zoom.

36.    On March 30, 2023, at approximately 6:02 PM, Plaintiff logged-in to the Executive Session meeting, but the School Committee quickly requested that he log-out so that the Committee could discuss a matter in private.

37.     After Plaintiff logged-out, the School Committee entered into Executive Session and Defendant Kwiecinski addressed the Committee, stating:

> [S]he is very discouraged by the email Dr. Perrone sent in response to the committee's offer/contract.  She stated addressing the email to Ladies is unprofessional and dismissive and she was insulted.…She stated she is terrified of his behavior, she sees a major problem, and is worried of a procedure to terminate if needed, versus rescinding the offer now.

38.     Defendant Goldstein asked about the status of the employment contract and Defendant Kwiecinski responded by stating that the School Committee and Plaintiff had a "verbal agreement only."

39.     Several other School Committee Members, including Defendant LaChapelle, Defendant Harvey, Defendant Hersey, and Defendant Goldstein echoed Defendant Kwiecinski's (collectively, "Individual Defendants") concerns regarding Plaintiff's use of the word "Ladies" to address his March 29, 2023 email to Defendant Kwiecinski and Ms. Colby.  Individual Defendants believed Plaintiff's use of the word "Ladies" to be a "microaggression."

40.     When another School Committee Member, Laurie García ("Ms. García"), requested that the School Committee provide Plaintiff with an opportunity to explain himself prior to taking a vote to "rescind" his employment contract, Defendant Harvey stated, "we cannot give an oppressor [Plaintiff] any opportunity to explain away the oppression [his use of the word 'Ladies']."

41.     While convened in Executive Session, the School Committee voted to "rescind" Plaintiff's employment contract by a 5-1-1 vote, with Defendants Kwiecinski, LaChapelle, Harvey, Hersey, and Goldstein all voting to "rescind" Plaintiff's employment contract.[2]

---

[2]  Ms. García voted against "rescinding" Plaintiff's employment contract, and School Committee Member, Shannon Dunham, abstained from this vote.

42.    The law concerning Plaintiff's right to have prior notice of the reasons for the termination of his contact and his right to a pretermination hearing were clearly established at the time that Defendant City of Easthampton, Defendant City of Easthampton School Committee, and Individual Defendants (collectively, "Defendants"), "rescinded" his employment contract.  A reasonably competent School Committee Member would know, or should have known, that there are legal consequences to terminating an employment contract.

43.    Prior to the vote to "rescind" Plaintiff's employment contract, Defendants knew, or should have known, that it was practicable to provide Plaintiff with notice of their concerns about his use of the term "Ladies."  Further, Defendants knew, or should have known, that it was practicable to provide Plaintiff with a pretermination hearing before "rescinding" the employment contract.

44.    However, it was only *after* the Committee "rescinded" the employment contract that Plaintiff received a text message from Defendant Kwiecinski to log-in to the meeting.

45.    Upon returning to the meeting, Defendant Kwiecinski "informed Dr. Perrone of the committee's decision to rescind the offer and explained the reason why."

46.    While Defendant Kwiecinski briefly mentioned Plaintiff's contractual requests in his March 29, 2023 email, most of the discussion involved Plaintiff's use of the term "Ladies":

> Chair Kwiecinski expressed…the committee is concerned of the inappropriate address to [Ms. Colby] and herself as Ladies – [it] is unprofessional and shows microaggression and is disrespectful…Ladies is a microaggression.  The first interaction should be professional and [the email] should have been addressed [to] Chair Kwiecinski.  Chair Kwiecinski expressed her concern for unprofessionalism and is surprised it is a small thing to him [Plaintiff].  This committee feels it is dismissing to the Chair.  [*sic*]

47.    In response, Plaintiff *apologized three times* for any inadvertent offense he had caused.  Plaintiff explained that it was not his intention to be unprofessional, and that he was

unaware that the word "Ladies" was an insult and/or a microaggression.  Plaintiff stated that "he will never do that again and will be [more] formal".

48.     In response to Plaintiff's apologies, Defendant Kwiecinski responded:

The committee does not need someone who needs to be chastised, she is surprised [h]e does not recognize that it is highly inappropriate and unprofessional…***I am sorry, but the vote has been taken***…Chair Kwiecinski stated she hoped he learned from this the importance as an educator and that it makes sense to him, she hoped going forward it does.  [*sic*]

(emphasis added).

49.     Plaintiff inquired if his use of the word "Ladies" was the primary reason for the Committee's decision to "rescind" his employment contract.  In response, Defendant Kwiecinski and Defendant LaChapelle explained that the School Committee would publicly characterize its "recission" of his employment contract as "failed negotiations," and repeatedly stated that the School Committee was "bound by the Executive Session," and there would be "no talking [about the circumstances surrounding Plaintiff's 'recission' of his employment contract]."

50.     After Plaintiff excused himself from the Executive Session meeting, Defendant Kwiecinski called the School Committee's legal counsel, Russell J. Dupere, Esq. ("Attorney Dupere"), to "update him of the event and review next steps and actions."  Defendants decided that:

Attorney Dupere will draft a letter to Dr. Perrone stating the committee could not complete negotiations, the terms asked for were not acceptable, and the committee voted to discontinue negotiations.

51.     On March 31, 2023, Defendant Kwiecinski, on behalf of the School Committee, sent Plaintiff a letter, which stated, falsely:

As you [Plaintiff] are aware, through our communications and discussions we [the School Committee and Plaintiff] were not able to reach a mutually agreeable contract.  Therefore, we will not be able to enter into an employment contract with you.

52.    Defendant Kwiecinski **did not cite** Plaintiff's use of the term "Ladies" as a reason for Defendants' decision to "rescind" his employment contract in the letter, even though it was the primary reason that was communicated to Plaintiff on March 30, 2023, during the Executive Session meeting.

53.    Following the Executive Session meeting on March 30, 2023, several School Committee Members attempted to change the March 30, 2023 Executive Session meeting minutes in order to soften some of the remarks made by the School Committee Members. Those efforts ultimately failed, and the original minutes passed.

54.    Former School Committee Chairperson and Member and Easthampton resident, Debora Lusnia ("Ms. Lusnia"), believed that the School Committee violated the Massachusetts Open Meeting Law (the "Open Meeting Law"), M.G.L. c. 30A §§ 18-25, and on or about June 27, 2023, Ms. Lusnia filed a complaint against the School Committee with the Massachusetts Office of the Attorney General.[3]

55.    Ms. Lusnia alleged that the School Committee violated the Open Meeting Law by holding the vote to "rescind" Plaintiff's contract in the executive session, which was not open to the public, and constituted an improper use of the executive session.

56.    On December 28, 2023, after investigating Ms. Lusnia's complaint, the Massachusetts Office of the Attorney General determined that the School Committee violated the Open Meeting Law by failing to first convene in an "open session," in which the public could be present, before entering into executive session. The Massachusetts Office of the Attorney General ordered the School Committee's immediate and future compliance with the Open

---

[3] Upon information and belief, Mr. Lusnia also filed a complaint regarding the School Committee's alleged violation of the Open Meeting Law with the School Committee on or about April 17, 2023. Upon information and belief, the School Committee responded to Ms. Lusnia's complaint by letter on or about April 26, 2023.

Meeting Law, and cautioned the Committee against any similar violations in the future, which could be considered evidence of intent to violate the Open Meeting Law.

57.    Given that the School Committee had already released the minutes of the March 30, 2023 Executive Session Meeting on or about July 6, 2023, the Massachusetts Office of the Attorney General did not order any further remedial action as to the School Committee's violation of the Open Meeting Law.

58.    Following Defendants' decision to "rescind" Plaintiff's employment contract, Individual Defendants intentionally and maliciously defamed Plaintiff and mischaracterized the Committee's decision to "rescind" Plaintiff's employment contract in interviews with the media, on social media, and at subsequent School Committee meetings.

59.    Individual Defendants publicly portrayed Plaintiff as an oppressor who is an insensitive, unprofessional, dismissive, insulting, and sexist person, and who also fails to grasp rapidly advancing social conventions.

60.    Further, in statements made to the public, Individual Defendants stated that Plaintiff's use of the term "Ladies," while inappropriate and unprofessional, was not the sole reason that his employment contract was "rescinded".  Individual Defendants explained that the School Committee's vote to "rescind" Plaintiff's employment contract was based on a culmination of factors, which included: (1) Plaintiff's failure to be immediately responsive to the School Committee's phone call(s) and other communication(s) to offer him the Superintendent position between approximately 11:00 PM on March 23, 2023 and 12:00 AM on March 24, 2023; (2) Plaintiff's "unreasonable" requests regarding the employment contract; and (3) Plaintiff's use of the term "Ladies" in his March 29, 2023 email to address Defendant Kwiecinski and Ms. Colby.

61.    On April 10, 2023, the School Committee voted to offer the Superintendent position to the second ranking-finalist candidate.  Following the vote, Defendant Kwiecinski offered the candidate the position.

62.    However, before the candidate accepted the School Committee's offer, Easthampton students discovered several social media posts from her personal accounts, which the students characterized as containing "anti-transgender" rhetoric.  The students brought these posts to the attention of the School Committee.

63.    Defendant Kwiecinski then contacted the candidate regarding the School Committee's concerns about the social media posts and invited her to address the posts before moving forward in the hiring process.

64.    Defendant Kwiecinski extended the invitation described above in order to afford the candidate an opportunity to be heard prior to the School Committee taking any formal action on her candidacy.

65.    However, in response to Defendant Kwiecinski's inquiry, the candidate withdrew herself from consideration for the Superintendent position.

66.    After the second-ranking candidate withdrew herself from consideration, the School Committee launched a search for an Interim Superintendent for the 2023-2024 academic year.

67.    On or about June 27, 2023, the School Committee announced that Maureen Binienda ("Ms. Binienda") would serve as Interim Superintendent for the 2023-2024 academic year.

68.    Thereafter, on or about December 12, 2023, the School Committee voted in favor of extending Ms. Binienda's Interim Superintendent contract for the 2024-2025 academic year,

pending an approval waiver from the Massachusetts Department of Elementary and Secondary Education ("DESE").

69.     Ms. Binienda, unlike Dr. Perrone, does not possess a doctoral level, or equivalent degree.  In addition Ms. Binienda was hired as Interim Superintendent at a salary in the amount of $157,000.00 per year; a salary $6,000.00 higher than what Plaintiff was offered and had accepted.

## VI.     LEGAL CLAIMS

### COUNT I: Breach of Contract
### vs. Defendant City of Easthampton and Defendant City of Easthampton School Committee

70.     Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

71.     As set out more fully above, on March 24, 2023, Defendant City of Easthampton and Defendant City of Easthampton School Committee verbally offered Plaintiff the position of Superintendent of the Easthampton Public School District for a three-year term, at an annual salary of $151,000.00.

72.     Defendant City of Easthampton and Defendant City of Easthampton School Committee's offer was sufficiently definite as it contained all essential terms, such as the compensation and duration of the employment contract.  *See Frederick v. ConAgra*, 713 F. Supp. 41, 45-46 (D. Mass. 1989) (enforcing oral employment contracts for employment in Massachusetts, provided the terms of the offer were sufficiently definite and there was valid acceptance and consideration); *see also Boothby v. Texon, Inc.*, 608 N.E.2d 1028, 1033 (Mass. 1993) (enforcing oral promises as an employment contract between an employer and an employee).

73.    Plaintiff verbally accepted Defendant City of Easthampton and Defendant City of Easthampton School Committee's offer on the same telephone call and assented to all terms, thus validly accepting their offer.

74.    Thereafter, on March 29, 2023, after reviewing the written employment contract, which was sent to Plaintiff in an email, Plaintiff responded to the email and accepted the employment contract, including language that Plaintiff would only be terminated prior to the end of the contract term "for cause."  *See* Exhibit A at ¶ 5.

75.    Defendant City of Easthampton and Defendant City of Easthampton School Committee breached their written employment contract with Plaintiff when they voted to "rescind" the contract because he addressed Defendant Kwiecinski and Ms. Colby in an email as "Ladies," which was not a material breach of the terms of the employment contract.

76.    Further, Defendant City of Easthampton and Defendant City of Easthampton School Committee breached their employment contract with Plaintiff by terminating him without "cause."

77.    As a direct and proximate result of Defendant City of Easthampton and Defendant City of Easthampton School Committee's unlawful conduct, they have caused Plaintiff to incur damages, including lost income, lost employee benefits, and lost retirement benefits.

### COUNT II: Breach of the Implied Covenant of Good Faith and Fair Dealing
### vs. Defendant City of Easthampton and Defendant City of Easthampton School Committee

78.    Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

79.    There was an implied covenant of good faith and fair dealing in the employment contract between Defendant City of Easthampton, Defendant City of Easthampton School Committee, and Plaintiff.  *See Anthony's Pier Four, Inc. v. HBC Associates*, 585 N.E.2d 806,

820 (Mass. 1991) (holding that every contract in Massachusetts is subject to an implied covenant of good faith and fair dealing); *see also* Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981).

80.     The implied covenant of good faith and fair dealing ensures that neither party interferes with the ability of the other party to enjoy the fruits of the contract, and, when performing the obligation(s) of the contract, each party remains faithful to the intended and agreed expectations of the contract.  *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100 (1st Cir. 2009) (quoting *Chokel v. Genzyme Corp.*, 867 N.E.2d 325, 329 (Mass. 2007)).

81.     In order to prove that a party breached the implied covenant of good faith and fair dealing, the non-breaching party must prove evidence of bad faith or an absence of good faith. *See T.W. Nickerson, Inc. v. Fleet National Bank*, 924 N.E.2d 696, 706-706 (Mass. 2010); *see also Nile v. Nile*, 734 N.E.2d 1153, 1160 (Mass. 2000) (holding that proving a lack of good faith may be inferred by evidence that the breaching party's conduct was unreasonable under the circumstances).

82.     Defendant City of Easthampton and Defendant City of Easthampton School Committee breached the implied covenant of good faith and fair dealing by "rescinding" their employment contract with Plaintiff by terminating him, without "cause," for addressing an email to two women as "Ladies."

83.     Defendant City of Easthampton and Defendant City of Easthampton School Committee breached the implied covenant of good faith and fair dealing because they terminated Plaintiff's employment contract in bad faith, and their conduct of terminating the employment contract was unreasonable under the circumstances.

84.     As a direct and proximate result of Defendant City of Easthampton and Defendant City of Easthampton School Committee's unlawful conduct, they have caused Plaintiff to incur

damages, including lost income, lost employment benefits, and lost retirement benefits.

**COUNT III: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth
Amendment Procedural Due Process Rights
vs. Defendant City of Easthampton and Defendant Easthampton School Committee**

85.     Plaintiff realleges and incorporates herein the allegations contained in each and
every other paragraph of this Complaint.

86.     As set out more fully above, Defendant City of Easthampton and Defendant City
of Easthampton School Committee, through their illegal and unconstitutional actions, deprived
Plaintiff of his constitutionally protected property interest in his three-year written employment
contract, under the color of law, and without procedural due process; thus violating Plaintiff's
rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.
*See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; *Clevland Bd. of Educ.*, 470 U.S. at 532;
*Chmielinski v. Massachusetts*, 513 F.3d. 309, 315-317 (1st Cir. 2008); *Kirschling*, 687 F. Supp.
at 932-935.

87.     Defendant City of Easthampton and Defendant City of Easthampton School
Committee denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful
and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract,
thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the
United States Constitution and 42 U.S.C. § 1983.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. §
1983.

88.     As a direct and proximate result of Defendant City of Easthampton and Defendant
City of Easthampton School Committee's unlawful and unconstitutional conduct, Plaintiff
suffered economic damages, including but not limited to, lost wages, lost employee benefits, lost
retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has
suffered severe mental and emotional distress, pain and suffering, and damage to his personal

and professional reputation due to Defendant City of Easthampton and Defendant City of

Easthampton School Committee's unlawful and unconstitutional conduct.

**COUNT IV: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth
Amendment Procedural Due Process Rights
vs. Defendant LaChapelle, Individually, and in their Official Capacity as Mayor of the
<u>City of Easthampton and a Member of the City of Easthampton School Committee</u>**

89.    Plaintiff realleges and incorporates herein the allegations contained in each and

every other paragraph of this Complaint.

90.    Defendant LaChapelle, individually, and as the Mayor of the City of Easthampton

and a Member of the School Committee, officially implemented and executed the

unconstitutional termination of Plaintiff's employment contract.

91.    As set out more fully above, Defendant LaChapelle, maliciously and in bad faith,

deprived Plaintiff of his constitutionally protected property interest in his employment contract,

under the color of law, without procedural due process, and thus violated Plaintiff's rights under

the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  *See* U.S.

Const. amend. XIV § 1; 42 U.S.C. § 1983; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*,

513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935.

92.    Defendant LaChapelle, maliciously and in bad faith, denied Plaintiff prior notice

of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing

prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of

law in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §

1983.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983.

93.    As a direct and proximate result of Defendant LaChapelle's unlawful and

unconstitutional conduct, Plaintiff suffered economic damages, including but not limited to, lost

wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and

costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant LaChapelle's unlawful and unconstitutional conduct.

### COUNT V: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights vs. Defendant Kwiecinski, Individually, and in her Official Capacity as the Chairperson and a Member of the City of Easthampton School Committee

94.     Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

95.     Defendant Kwiecinski, individually, and as the Chairperson and a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

96.     As set out more fully above, Defendant Kwiecinski, maliciously and in bad faith, deprived Plaintiff of his constitutionally protected property interest in his employment contract, under the color of law, and without procedural due process; thus violating Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935.

97.     Defendant Kwiecinski, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983.

98.     As a direct and proximate result of Defendant Kwiecinski's unlawful and unconstitutional conduct, Plaintiff suffered economic damages, including but not limited to, lost

wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and costs. In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant Kwiecinski's unlawful and unconstitutional conduct.

### COUNT VI: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights
### vs. Defendant Harvey, Individually, and in her Official Capacity as the
### <u>Secretary and a Member of the City of Easthampton School Committee</u>

99.     Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

100.     Defendant Harvey, individually, and as the Secretary and a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

101.     As set out more fully above, Defendant Harvey, maliciously and in bad faith, deprived Plaintiff of his constitutionally protected property interest in his employment contract, under the color of law, and without procedural due process; thus violating Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935.

102.     Defendant Harvey, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983.

103.     As a direct and proximate result of Defendant Harvey's unlawful and

unconstitutional conduct, Plaintiff suffered economic damages, including but not limited to, lost

wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and

costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering,

and damage to his personal and professional reputation due to Defendant Harvey's unlawful and

unconstitutional conduct.

### COUNT VII: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights vs. Defendant Hersey, Individually, and in his Official Capacity as a Member of the City of Easthampton School Committee

104.    Plaintiff realleges and incorporates herein the allegations contained in each and

every other paragraph of this Complaint.

105.    Defendant Hersey, individually, and as a Member of the School Committee,

officially implemented and executed the unconstitutional termination of Plaintiff's employment

contract.

106.    As set out more fully above, Defendant Hersey, maliciously and in bad faith,

deprived Plaintiff of his constitutionally protected property interest in his employment contract,

under the color of law, and without procedural due process; thus violating Plaintiff's rights under

the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  *See* U.S.

Const. amend. XIV § 1; 42 U.S.C. § 1983; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*,

513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935.

107.    Defendant Hersey, maliciously and in bad faith, denied Plaintiff prior notice of

the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior

to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in

violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

*See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983.

108.    As a direct and proximate result of Defendant Hersey's unlawful and unconstitutional conduct, Plaintiff suffered economic damages, including but not limited to, lost wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant Hersey's unlawful and unconstitutional conduct.

**COUNT VIII: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights**
**vs. Defendant Goldstein, Individually, and in his Official Capacity**
**as a Member of the City of Easthampton School Committee**

109.    Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

110.    Defendant Goldstein, individually, and as a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

111.    As set out more fully above, Defendant Goldstein, maliciously and in bad faith, deprived Plaintiff of his constitutionally protected property interest in his employment contract, under the color of law, and without procedural due process; thus violating Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935.

112.    Defendant Goldstein, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in

violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

*See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983.

113.    As a direct and proximate result of Defendant Goldstein's unlawful and

unconstitutional conduct, Plaintiff suffered economic damages, including but not limited to, lost

wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and

costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering,

and damage to his personal and professional reputation due to Defendant Goldstein's unlawful

and unconstitutional conduct.

**COUNT IX: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H; 11I, for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights and Plaintiff's Mass. Const. Pt. 1, Art. X Procedural Due Process Rights vs. Defendant LaChapelle, Individually, and in their Official Capacity as Mayor of the City of Easthampton and a Member of the City of Easthampton School Committee**

114.    Plaintiff realleges and incorporates herein the allegations contained in each and

every other paragraph of this Complaint.

115.    Defendant LaChapelle, individually, and as the Mayor of the City of Easthampton

and a Member of the School Committee, officially implemented and executed the

unconstitutional termination of Plaintiff's employment contract.

116.    As set out more fully above, Defendant LaChapelle, individually, and as the

Mayor of Easthampton and a Member of the School Committee, through threats, intimidation,

and/or coercion, maliciously and in bad faith, interfered with Plaintiff's exercise, or enjoyment,

of rights secured to him by the United States Constitution, the laws of the United States, the

Massachusetts Declaration of Rights, and laws of the Commonwealth of Massachusetts,

including Plaintiff's right to procedural due process of law prior to the termination of his

employment contract under the Fourteenth Amendment to the United States Constitution and

Article X of the Massachusetts Declaration of Rights.  *See* U.S. Const. amend. XIV § 1; 42

U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935; *see also Spencer v. Roche*, 755 F. Supp. 2d 755, 250, 272 n.20 (D. Mass. 2010) ("Defendants correctly assert that no common law cause of action exists under the Massachusetts Declaration of Rights. Any claims for a violation of the rights secured by the Constitution of the Commonwealth must be pursued under the MCRA [Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H; 11I.].").

117.    Defendant LaChapelle, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Article X of the Massachusetts Declaration of Rights, M.G.L. c. 12 § 11H, and M.G.L. c. 12 § 11I.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I.

118.    Defendant LaChapelle, by threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's constitutionally protected property interest in his employment contract as the Superintendent of Easthampton Public Schools.

119.    As a result of Defendant LaChapelle's unlawful and unconstitutional conduct, Plaintiff suffered economic damages, including lost wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant LaChapelle's unlawful and unconstitutional conduct.

**COUNT X: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H; 11I, for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights and Plaintiff's Mass. Const. Pt. 1, Art. X Procedural Due Process Rights vs. Defendant Kwiecinski, Individually, and in her Official Capacity as the Chairperson and a Member of the City of Easthampton School Committee**

120.    Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

121.    Defendant Kwiecinski, individually, and as the Chairperson and a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

122.    As set out more fully above, Defendant Kwiecinski, individually, and in her official capacity as the Chairperson and a Member of the School Committee, through threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's exercise, or enjoyment, of rights secured to him by the United States Constitution, the laws of the United States, the Massachusetts Declaration of Rights, and laws of the Commonwealth of Massachusetts, including Plaintiff's right to procedural due process of law prior to the termination of his employment contract under the Fourteenth Amendment to the United States Constitution and Article X of the Massachusetts Declaration of Rights.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935; *see also Spencer*, 755 F. Supp. 2d at 250, 272 n.20.

123.    Defendant Kwiecinski, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Article X of the Massachusetts Declaration of Rights, M.G.L. c. 12 § 11H, and M.G.L. c.

12 § 11I.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I.

124.     Defendant Kwiecinski, by threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's constitutionally protected property interest in his employment contract as the Superintendent of Easthampton Public Schools.

125.     As a result of Defendant Kwiecinski's unlawful and unconstitutional conduct, Plaintiff suffered economic damages, including lost wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant Kwiecinski's unlawful and unconstitutional conduct.

**COUNT XI: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H; 11I, for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights and Plaintiff's Mass. Const. Pt. 1, Art. X Procedural Due Process Rights vs. Defendant Harvey, Individually, and in her Official Capacity as the <u>Secretary and a Member of the City of Easthampton School Committee</u>**

126.     Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

127.     Defendant Harvey, individually, and as the Secretary and a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

128.     As set out more fully above, Defendant Harvey, individually, and in her official capacity as the Secretary and a Member of the School Committee, through threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's exercise, or enjoyment, of rights secured to him by the United States Constitution, the laws of the United States, the Massachusetts Declaration of Rights, and the laws of Commonwealth of Massachusetts,

including Plaintiff's right to procedural due process of law prior to the termination of his employment contract under the Fourteenth Amendment to the United States Constitution and Article X of the Massachusetts Declaration of Rights.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935; *see also Spencer*, 755 F. Supp. 2d at 250, 272 n.20.

129.     Defendant Harvey, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Article X of the Massachusetts Declaration of Rights, M.G.L. c. 12 § 11H, and M.G.L. c. 12 § 11I.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I.

130.     Defendant Harvey, by threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's constitutionally protected property interest in his employment contract as the Superintendent of Easthampton Public Schools.

131.     As a result of Defendant Harvey's unlawful and unconstitutional conduct, Plaintiff suffered economic damages, including lost wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant Harvey's unlawful and unconstitutional conduct.

**COUNT XII: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H; 11I, for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights and Plaintiff's Mass. Const. Pt. 1, Art. X Procedural Due Process Rights vs. Defendant Hersey, Individually, and in his Official Capacity as a Member of the City of Easthampton School Committee**

132.    Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

133.    Defendant Hersey, individually, and as a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

134.    As set out more fully above, Defendant Hersey, individually, and in his official capacity as a Member of the School Committee, through threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's exercise, or enjoyment, of rights secured to him by the United States Constitution, the laws of the United States, the Massachusetts Declaration of Rights, and the laws of Commonwealth of Massachusetts, including Plaintiff's right to procedural due process of law prior to the termination of his employment contract under the Fourteenth Amendment to the United States Constitution and Article X of the Massachusetts Declaration of Rights.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d. at 315-317; *Kirschling*, 687 F. Supp. at 932-935; *see also Spencer*, 755 F. Supp. 2d at 250, 272 n.20.

135.    Defendant Hersey, maliciously and in bad faith, denied Plaintiff prior notice of the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Article X of the Massachusetts Declaration of Rights, M.G.L. c. 12 § 11H, and M.G.L. c. 12 §

11I.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12 §§ 11H; 11I.

136.    Defendant Hersey, by threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's constitutionally protected property interest in his employment contract as the Superintendent of Easthampton Public Schools.

137.    As a result of Defendant Hersey's unlawful and unconstitutional conduct, Plaintiff suffered economic damages, including lost wages, lost employee benefits, lost retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has suffered severe mental and emotional distress, pain and suffering, and damage to his personal and professional reputation due to Defendant Hersey's unlawful and unconstitutional conduct.

**COUNT XIII: Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12 §§ 11H; 11I, for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights and Plaintiff's Mass. Const. Pt. 1, Art. X Procedural Due Process Rights vs. Defendant Goldstein, Individually, and in his Official Capacity as a Member of the City of Easthampton School Committee**

138.    Plaintiff realleges and incorporates herein the allegations contained in each and every other paragraph of this Complaint.

139.    Defendant Goldstein, individually, and as a Member of the School Committee, officially implemented and executed the unconstitutional termination of Plaintiff's employment contract.

140.    As set out more fully above, Defendant Goldstein, individually, and in his official capacity as a Member of the School Committee, through threats, intimidation, and/or coercion, maliciously and in bad faith, interfered with Plaintiff's exercise or enjoyment of rights secured to him by the United States the Constitution, the laws of the United States, the Massachusetts Declaration of Rights, and the laws of Commonwealth of Massachusetts, including Plaintiff's right to procedural due process of law prior to the termination of his employment contract under

the Fourteenth Amendment to the United States Constitution and Article X of the Massachusetts

Declaration of Rights.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1,

art. X; M.G.L. c. 12 §§ 11H; 11I; *Clevland Bd. of Educ.*, 470 U.S. at 532; *Chmielinski*, 513 F.3d.

at 315-317; *Kirschling*, 687 F. Supp. at 932-935; *see also Spencer*, 755 F. Supp. 2d at 250, 272

n.20.

141.    Defendant Goldstein, maliciously and in bad faith, denied Plaintiff prior notice of

the reasons for his discharge, as well as a meaningful and constitutionally sufficient hearing prior

to terminating Plaintiff's employment contract, thereby denying Plaintiff due process of law in

violation of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983,

Article X of the Massachusetts Declaration of Rights, M.G.L. c. 12 § 11H, and M.G.L. c. 12 §

11I.  *See* U.S. Const. amend. XIV § 1; 42 U.S.C. § 1983; Mass. Const. pt. 1, art. X; M.G.L. c. 12

§§ 11H; 11I.

142.    Defendant Goldstein, by threats, intimidation, and/or coercion, maliciously and in

bad faith, interfered with Plaintiff's constitutionally protected property interest in his

employment contract as the Superintendent of Easthampton Public Schools.

143.    As a result of Defendant Goldstein's unlawful and unconstitutional conduct,

Plaintiff suffered economic damages, including lost wages, lost employee benefits, lost

retirement benefits, lost earning potential, attorneys' fees, and costs.  In addition, Plaintiff has

suffered severe mental and emotional distress, pain and suffering, and damage to his personal

and professional reputation due to Defendant Goldstein's unlawful and unconstitutional conduct.

### COUNT XIV: Defamation
### vs. Individual Defendants, Individually, and in their Official Capacities

144.    Plaintiff realleges and incorporates herein the allegations contained in each and

every other paragraph of this Complaint.

145.    As set out more fully above, Individual Defendants, individually, and in their official capacities, intentionally and maliciously defamed Plaintiff by intentionally mischaracterizing their decision to terminate Plaintiff's employment contract in interviews with the media, on social media, and at subsequent School Committee meetings.

146.    Further, in interviews with the media, on social media, and at subsequent School Committee Meetings, Individual Defendants intentionally portrayed Plaintiff to the public as an oppressor who is insensitive, unprofessional, dismissive, insulting, and sexist, and as a person who fails to grasp advancing social conventions.

147.    Individual Defendants published these statements maliciously and intentionally, with knowledge that these statements and representations were false, and knew that such statements and representations had a high likelihood to harm Plaintiff's reputation in the minds of a substantial number of people in the community.

148.    Individual Defendants published these defamatory statements and representations about Plaintiff publicly and in writing, which resulted in harm to Plaintiff's professional opportunities and Plaintiff's reputation among his colleagues, other educators, and his community at-large.

149.    As a direct and proximate result of Individual Defendants' defamatory statements and representations concerning Plaintiff, Plaintiff suffered damages, including reputational harm in his community, loss of standing in his community, emotional distress, personal humiliation, shame and disgrace, mental anguish and suffering, lost future employment opportunities, attorneys' fees, and costs.

## VII.    PRAYER FOR RELIEF

### COUNT I:

1.    Lost wages, including lost bonuses and raises for the balance of Plaintiff's employment contract;

2.    Lost employee benefits, including retirement benefits;

3.    Interest pursuant to M.G.L. c. 231 § 6C; and

4.    Any and all other relief as the Court deems just and proper.

### COUNT II:

1.    Damages in an amount to be determined by a judge or jury;

2.    Interest pursuant to M.G.L. c. 231 § 6C; and

3.    Any and all other relief as the Court deems just and proper.

### COUNTS III-VIII:

1.    Compensatory damages pursuant to 42 U.S.C. § 1983, including lost wages, lost employee benefits, lost retirement benefits, lost earning potential, damages for emotional distress, damages for loss of reputation, damages for personal humiliation, damages for mental anguish and suffering;

2.    Punitive damages against Defendant LaChapelle, Defendant Kwiecinski, Defendant Harvey, Defendant Hersey, and Defendant Goldstein, individually, and in their official capacities;

3.    Attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

4.    Pre-judgment and post-judgment interest; and

5.    Any and all other relief as the Court deems just and proper.

## COUNTS IX-XIII:

1. Compensatory damages pursuant to M.G.L. 12 § 11I, including lost wages, lost employee benefits, lost retirement benefits, lost earning potential, damages for emotional distress, damages for loss of reputation, damages for personal humiliation, damages for mental anguish and suffering;

2. Punitive damages;

3. Attorneys' fees and costs pursuant to M.G.L. c. 12 § 11I;

4. Pre-judgment and post-judgment interest; and

5. Any and all other relief as the Court deems just and proper.

## COUNT XIV:

1. Compensatory damages, including damages for reputational harm in the community, damages for loss of standing in his community, emotional distress damages, personal humiliation damages, shame and disgrace damages, damages for his mental anguish and suffering, and future damages for loss of economic benefits;

2. Interest pursuant to M.G.L. c. 231 § 6C; and

3. Any and all other relief as the Court deems just and proper.

## VIII.   JURY DEMAND

The Plaintiff requests a trial before a jury on all issues so triable.

Dated: October 29, 2024

Respectfully submitted,

The Plaintiff,
VITO J. PERRONE
By his Attorneys,

*/s/ Raymond Dinsmore*
Raymond Dinsmore, Esq. (BBO # 667340)
Richard E. Hayber, Esq. (BBO # 569131)
Ryan B. Guers, Esq. (BBO # 713870)
Hayber, McKenna & Dinsmore, LLC
One Monarch Place, Suite 1340
Springfield, MA 01144
Phone: (413) 785-1400
Fax: (860) 218-9555
Email: rdinsmore@hayberlawfirm.com
        rhayber@hayberlawfirm.com
        rguers@hayberlawfirm.com

*/s/ James B. Winston*
James B. Winston, Esq. (BBO # 650200)
James B. Winston Law Office
142 Main Street, Suite 1
Northampton, MA 01060
Phone: (413) 584-1110
Fax: (413) 584-1140
Email: james@jameswinstonlaw.com

*Attorneys for Plaintiff*