UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VITO J. PERRONE, | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | C.A. No. 3:24-cv-30132-MGM |
| | ) | |
| CITY OF EASTHAMPTON et al. | ) | |
| EASTHAMPTON SCHOOL COMMITTEE; | ) | **LEAVE TO FILE GRANTED ON** |
| NICOLE LACHAPELLE, Individually, and in | ) | **12/23/2024 [ECF NO. 15]** |
| their Official Capacity as the Mayor of the City | ) | |
| of Easthampton and a Member of the City of | ) | |
| Easthampton School Committee; CYNTHIA | ) | |
| KWIECINSKI, Individually, and in her Official | ) | |
| Capacity as the Chairperson and a Member of the | ) | |
| City of Easthampton School Committee; | ) | |
| MEGAN HARVEY, Individually, and in her | ) | |
| Official Capacity as the Secretary and a Member | ) | |
| of the City of Easthampton School Committee; | ) | |
| BENJAMIN HERSEY, Individually, and in his | ) | |
| Official Capacity as a Member of the City of | ) | |
| Easthampton School Committee; and MARIN | ) | |
| GOLDSTEIN, Individually, and in his Official | ) | |
| Capacity as a Member of the City of | ) | |
| Easthampton School Committee, | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

The defendants, CITY OF EASTHAMPTON (the "City"), CITY OF EASTHAMPTON SCHOOL COMMITTEE (the "ESC"), NICOLE LACHAPELLE ("Mayor LaChapelle"), CYNTHIA KWIECINSKI ("Kwiecinski"), MEGAN HARVEY ("Harvey"), BENJAMIN HERSEY ("Hersey"), and MARIN GOLDSTEIN ("Goldstein" and with Mayor LaChapelle, Kwiecinski, Harvey and Hersey, the "Individual Defendants," and with the City and ESC, the "Defendants"), submit this memorandum of law in support of their Motion to Dismiss. The Defendants seek dismissal of all of the claims against them for failure to state claims upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

I. **GENERAL FACTUAL BACKGROUND**

Solely for the purposes of the instant motion, the Defendants accept as true the facts as distinguished from conclusory allegations as set forth therein. This action arises out of ESC's search for a superintendent for the City's Public Schools ("EPS") in late 2022 and early 2023. Briefly, the plaintiff, Dr. Vito Perrone ("Dr. Perrone" or the "Plaintiff"), interviewed for the position on or about March 23, 2023. (ECF No. 1 at ¶ 26[1]; Minutes for ESC Meeting of March 23, 2023, attached as Exhibit 1[2]). At the conclusion of his interview, which followed the interviews of the other candidates, the ESC deliberated and voted, four votes to three votes, to offer Dr. Perrone the superintendent position subject to the successful negotiation of a contract. (¶¶ 27-30; Exhibit 1). Thereafter, the parties engaged in negotiations, including the exchange of a draft contract (the "Draft Contract"). (¶¶ 27-33; ECF No. 1-3; Emails attached as Exhibit 2). Rather than accepting the Draft Contract as is, Dr. Perrone responded and made three, as he called them, "requests" for additional compensation in the form of minimum automatic cost of living adjustments, increased vacation days and increased sick days. (¶¶ 33; Exhibit 2). The parties were then scheduled to continue their negotiations at a meeting on March 30, 2023. (¶ 30; see also Minutes for ESC Meeting of March 28, 2023, attached as Exhibit 3; Minutes for ESC Meeting of March 30, 2023, attached as Exhibit 4).[3]

On March 30, 2023, the ESC voted to rescind its offer to Dr. Perrone. (¶ 33). At the time of this vote, the parties had not agreed to a finalized contract and had planned to meet to continue negotiations. (¶¶ 31-35; see also Exhibit 1; Exhibit 3; Exhibit 4).[4]

---

[1] For brevity, all citations to the Complaint shall be stated as "(¶ ___)."
[2] See Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) ("We may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."); Lu v. Menino, 98 F. Supp. 3d 85, 93 (D. Mass. 2015) ("the court may consider a limited category of documents outside the complaint without converting the motion into one for summary judgment" including "matters of public record, facts susceptible to judicial notice and documents sufficiently referred to in the complaint"). These minutes and the ones attached hereto as Exhibit 3 and Exhibit 4, infra, are available at https://easthamptonma.gov/AgendaCenter.
[3] See Note 2.
[4] Dr. Perrone's Complaint cites specifically to at least the meeting minutes attached as Exhibit 4.

Thereafter, Dr. Perrone made statements to third parties and media outlets regarding ESC's vote. A copy of the article (the "Article") containing Dr. Perrone's statements is attached hereto as <u>Exhibit 5</u>.[5] Neither Kwiecinski nor any other ESC member provided any substantive response.  See Exhibit 5. The ESC later issued the statement (the "ESC Statement") attached hereto as <u>Exhibit 6</u>.[6]

## II.    <u>STANDARD OF REVIEW</u>.

The standard of review for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires that the Court determine that a plaintiff's allegations state a claim on which relief can be granted. See, e.g., <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>Derin v. Stavros Ctr. for Indep. Living, Inc.</u>, 581 F. Supp. 3d 351, 354 (D. Mass. 2022). When presented with a motion to dismiss for failure to state a claim, a court must accept all well-pleaded allegations as true and grant the plaintiff the benefit of all reasonable inferences. <u>Ezra Charitable Trust v. Tyco Intern., Ltd.</u>, 466 F.3d 1, 5-6 (1st Cir. 2006). If a complaint states a plausible claim for relief on its face, it will survive a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678. A court need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." <u>Id.</u> Whether a complaint asserts a plausible claim is thus fact specific, and all legal conclusions made must be supported by factual allegations. <u>Id.</u>

## III.    <u>ARGUMENT</u>.

This action consists of fourteen claims, which, for purposes of this motion, can be grouped and will be addressed as follows:

Count I            Breach of Contract against City and ESC

Count II           Breach of the Covenant of Good Faith and Fair Dealing against the City and

---

[5] The Complaint refers to media reports and, therefore, the Court can review this article as part of the Motion to Dismiss. Regardless, "[o]ther courts have also taken judicial notice of newspaper articles and press releases ... when their conten[t]s cannot be reasonably questioned." See <u>Madison v. Cruz</u>, 393 F. Supp. 3d 135, 137 n.2 (D. Mass. 2019).

[6] See Notes 4 and 5, <u>supra</u>.  Further, it appears from the allegations that the Plaintiff may be referring to the ESC Statement. (¶¶ 59-60).

ESC

| | |
|---|---|
| Count III | Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights against City and ESC |
| Counts IV-VIII | Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights against LaChappelle, Kwiecinski, Harvey, Hersey and Goldstein in their individual and official capacities |
| Count IX-XIII | Violation of Massachusetts Civil Rights Act, M.G.L. c. 12 §§11H, 11I ("MCRA"), for Deprivation of Plaintiff's Fourteenth Amendment and State Constitutional Procedural Due Process Rights against LaChappelle, Kwiecinski, Harvey, Hersey and Goldstein in their individual and official capacities |
| Count XIV | Defamation against LaChappelle, Kwiecinski, Harvey, Hersey and Goldstein in their individual and official capacities |

## A.  The Plaintiff's Claims Are Barred By The Exclusivity Provision of Chapter 151B.

The Plaintiff has asserted claims against the City and EPS for violation of M.G.L. c. 151B, §§ 4(1), 4, and Title VII of the Civil Rights Act of 1964, as amended, MCAD Docket No. 24SEM00113, EEOC Charge No. 16C-2024-00810.[7] Those claims remain pending before the MCAD and EEOC.

The proper vehicle for claims of discrimination is "the administrative procedure provided in" M.G.L. c. 151B. See M.G.L. c. 151B, § 9. "Insofar as the plaintiff's common law claim[ ] [is] merely [a] recast version[ ] of" a claim that could have been made "under [M.G.L.] c. 151B, [it is] barred by that statute's exclusivity provision." Green v. Wyman–Gordon Co., 422 Mass. 551, 558 (1996); see Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994) ("An antidiscrimination statute such as Chapter 151B reflects the legislature's balancing of competing interests. Employees are protected against certain types of discharge. Employers are protected from unnecessary litigation by a relatively short statute of limitations ... and a mandatory conciliation process" [citation omitted]); see also Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382 (2016). To the extent that the Plaintiff's claims are simply a recast of the claims pending before the MCAD/EEOC, they must

---

[7] A copy of the Charge of Discrimination can be provided to the Court, but it largely mirrors the allegations of the Complaint.

be dismissed from this action. See <u>Butner v. Dep't of State Police</u>, 60 Mass. App. Ct. 461, 467 (2004) ("Because G.L. c. 151B, § 9, establishes an exclusive administrative procedure for addressing violations of G.L. c. 151B, § 4, with which the plaintiffs have failed to comply, their MCRA claims against the medical defendants must fail.").

   B. **<u>Count I: The Claim for Breach of Contract Against the City and ESC Must Be Dismissed</u>.**

   In order to recover on a contract claim, a plaintiff must prove (1) an express or implied agreement, in writing or oral; (2) for valid consideration; (3) performance or its equivalent by the plaintiff; (4) breach by the defendant; and (5) damage to the plaintiff. See <u>Singarella v. City of Boston</u>, 342 Mass. 385, 387 (1961). Contract interpretation is a question of law, left to the sound discretion of the court. See <u>Lexington Ins. Co. v. All Regions Chemical Labs, Inc.</u>, 419 Mass. 712, 713 (1995) (citing <u>Allstate Ins. Co. v. Bearce</u>, 412 Mass. 442, 446-447 (1992)).

   For a purported contract to be valid and enforceable, the parties must have reached agreement on all material terms and have had a present intention to be bound. See <u>Situation Mgmt. Sys. v. Malouf</u>, 430 Mass. 875, 878 (2000); <u>McCarthy v. Tobin</u>, 429 Mass. 84, 87 (1999). Further, a contract that cannot be performed within one year is subject to the Massachusetts Statute of Frauds, M.G.L.c. 259, § 1. See <u>Larson v. Jeffrey-Nichols Motor Co.</u>, 279 Mass. 362, 365 (1932) (holding that employment contract "was not a contract within the statute of frauds, G. L. c. 259, § 1(5), because it was capable of full performance within one year, although it might extend beyond that period"); see also <u>Lahlou v. Daley</u>, 874 F. Supp. 2d 8, 11 (D. Mass. 2012) ("Under the terms of the Massachusetts Statute of Frauds, as a contract that could not be performed within one year, it cannot be enforced unless it was in writing, which it was not."). The contract must also be in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized." M.G.L.c. 259, § 1.

### 1.  The Claim Should Be Limited To The ESC.

In Massachusetts, "[t]he power of a school committee, whether of a city of town, to employ a superintendent is controlled by G.L. c. 71, s 41…." Minnich v. Town of Nantucket, 350 Mass. 784, 784 (1966). The Legislature has provided school committees with the following authority:

> A school committee may award a contract to a superintendent of schools … for periods not exceeding six years which may provide for the salary, fringe benefits, and other conditions of employment, including but not limited to, severance pay, relocation expenses, reimbursement for expenses incurred in the performance of duties or office, liability insurance, and leave for said superintendent or school business administrator.

M.G.L. c. 71, § 41. Because the ESC is the only party that can enter into a contract with a superintendent, the ESC should be the only defendant to this claim for breach of contract. See M.G.L. c. 71, § 41. (ECF No. 1-3).

### 2.  The Statute of Frauds Renders The Purported Contract Unenforceable.

The Massachusetts Statute of Frauds, M.G.L.c. 259, § 1, applies to employment contracts. See Larson, 279 Mass. at 365. Here, the Plaintiff has not alleged any contract that survives the Statute of Frauds. The anticipated contract with Dr. Perrone was to be a three-year contract and, therefore, not capable of full performance within one year. There is also no contract signed by either party. (ECF No. 1-3). See Lahlou, 874 F. Supp. 2d at 11; see also Ferrera v. Carpionato Corp., 895 F.2d 818, 820-821 (1st Cir. 1990) (finding that the Rhode Island Statute of Frauds applied to a two-year contract).

### 3.  The Parties Had Not Agreed Upon The Essential Terms.

"It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement." Situation Mgmt. Sys., Inc., 430 Mass. at 878. "While it is not necessary that every term of the agreement be specified with precision, '[t]he parties must ... have progressed beyond the stage of imperfect negotiation.'" Lambert v. Fleet Natl. Bank, 449 Mass. 119, 123 (2007)(quoting from Situation Mgmt. Sys., Inc., 430 Mass. at 878). The essential terms of a contract "must be definite and

certain so that the intentions of the parties may be discovered, the nature and extent of their obligations ascertained, and their rights determined." Lucey v. Hero Int'l Corp., 361 Mass. 569, 574 (1972); Cygan v. Megathlin, 326 Mass. 732, 733-734 (1951). "The intent of the parties must be gathered from a fair construction of the contract as a whole and not by special emphasis upon any one part." Willitts v. Roman Cath. Archbishop of Bos., 411 Mass. 202, 208 (1991) (quoting Crimmins & Peirce Co. v. Kidder Peabody Acceptance Corp., 282 Mass. 367, 377 (1933)); see also Nortek, Inc. v. Liberty Mut. Ins. Co., 65 Mass. App. Ct. 764, 772 (2006) (""Under basic contract law principles, for an offer and acceptance to create a binding agreement there must be an objective manifestation of mutual assent, i.e., what is often referred to (somewhat misleadingly) as a 'meeting of the minds'…." (internal citations omitted)). "Expectations and negotiations fall far short of a binding agreement." Brighton Packing Co. v. Butchers' Slaughtering & Melting Ass'n, 211 Mass. 398, 405 (1912); see also Rosenfield v. United States Trust Co., 290 Mass. 210, 217 (1935) ("An agreement to reach an agreement is a contradiction in terms and imposes no obligation on the parties thereto").

Here, there was no "meeting of the minds" because the parties never objectively manifested their mutual assent to be bound; rather, the parties both knew that a contract would be final after further, successful negotiations of all terms. (Exhibit 1; Exhibit 3; Exhibit 4; Exhibit 6; Exhibit 5). Indeed, the Plaintiff has conspicuously avoided referring to this latter clause despite being well aware of its existence and reference to it throughout all communications and the minutes of the meetings. The actions of the parties also show that neither Dr. Perrone nor the ESC party treated the offer of March 23, 2023, or the subsequent Draft Contract as a final contract or a present intention to be bound by any agreement alleged in the Complaint.[8] (¶¶ 27-35; Exhibit 1; Exhibit 3). The email that immediately

---

[8] In addition to the case law cited above, see Gator Dev., Inc. v. New England Power Co., No. 035269, 2007 WL 2121942, at *3 (Mass. Super. July 16, 2007) (finding that "[t]he communications were in the nature of negotiations between" the parties and that "[t]he plaintiff's repeated requests for a written P & S themselves evince plaintiff's understanding that this was the parties' intention."). Here, too, the parties were always aware that no contract would become enforceable until all of the terms had been negotiated and approved by the ESC. See M.G.L. c. 71, § 41. Dr. Perrone himself engaged in further

preceded the March 30th rescission was Dr. Perrone's response to the terms set forth by the ESC. (¶ 33; ECF No. 1-3; see also Exhibit 2).[9] Dr. Perrone specifically stated that he accepted parts of the Draft Contract, but that he had three "requests."[10] (¶ 33; Exhibit 2). Dr. Perrone did not state that he would agree to terms regardless of ESC's position on the three requests; to the contrary, he said that the other terms were acceptable and, thus, the terms in Paragraphs 3, 12 and 13 were *not* acceptable or agreed upon. (¶ 33; Exhibit 2).

The meeting of March 30th was to negotiate a final agreement. (Exhibit 1; Exhibit 3; Exhibit 2). See I & R Mech., Inc., v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 458-460 (2004) (where RFP subject to further negotiations and bidder actively seeking lower price, reasonable person would know not a contract). It should also be noted that the Draft Contract contained a clause in Paragraph 19 that all of the terms of the agreement between the parties would be in said contract, and that "[t]he contract may not be changed, except by written agreement signed by a majority of the Committee and the Superintendent." (ECF No. 1-3, p.4; see also Note 7). There was neither a contract formed nor did Dr. Perrone have the unilateral ability to revise the terms of any agreement with the ESC.

Given the foregoing, there was no enforceable agreement and Dr. Perrone's actions amounted to, at best, a counteroffer. A counteroffer, however, is a rejection and not acceptance of contract terms. If a purported acceptance substantially varies from the terms of the offer, it is ineffective, creating no binding agreement. See Bank of United States v. Thomson & Kelly Co., 290 Mass. 224, 228 (1935);

---

negotiations. (Exhibit 2). The Draft Contract also contained the following language:

> ENTIRE AGREEMENT: This contract embodies the whole agreement between the Committee and the Superintendent and there are no inducements, promises, terms, conditions, or obligations made or entered into by either party other than those contained herein. *The contract may not be changed, except by written agreement signed by a majority of the Committee and the Superintendent.*

(ECF No. 1-3 at p. 4, Para. 19) (emphasis added).
[9] See Note 2, supra. Indeed, the plaintiff referred to and quoted from these emails, but did not include them as an exhibit to the Complaint.
[10] A "request" is defined as "the act of politely or officially asking for something." See https://dictionary.cambridge.org/us/dictionary/english/request.

Peretz v. Watson, 3 Mass. App. 727, 728 (1975) (holding that a "purported acceptance which varies from the terms of the offer in any material respect is in effect a rejection"). Here, not only had the parties yet to negotiate all of the terms of a final contract under the statute, M.G.L. c. 71, § 41, but Dr. Perrone demanded that the ESC agree to a guaranteed increase in his base compensation and demanded additional compensation by way of increased paid time off as follows: demanding forty sick days effective on day one of the contract and then eighteen days thereafter; demanding thirty instead of twenty-six vacation days effective July 1; and demanding an automatic increase of at least 3% in compensation for years two and three. (¶ 33; ECF No. 1-3 at Paras. 3, 12, 13; Exhibit 2). These terms, if accepted, would have amounted to thousands of dollars in additional expenditures by the ESC and the potential for additional days away from work. Such a change would require an additional vote on the revised terms, which had not occurred, but certainly constitutes a rejection of any offer by the Plaintiff. See M.G.L. c. 71, § 41. In response, the ESC's action is a rejection of his demands. Peretz, 3 Mass. App. at 728 (holding "that an offer once rejected cannot thereafter be revived by an attempted acceptance thereof").

It should not be lost on the Court that the Plaintiff's subsequent actions are also inconsistent with a party asserting a valid, enforceable contract has been formed. Dr. Perrone has filed a Charge of Discrimination with the MCAD/EEOC and this suit rather than demanding arbitration under the "contract." (ECF No. 1-3 at Paras. 5, 21). Dr. Perrone's actions – even as alleged – are a concession that he did not have an enforceable contract with the ESC.

Finally, there is no merit to the Plaintiff's assertion that the decision in Kirschling v. Lake Forest School District supports a finding of a contract under Massachusetts law. (¶ 2). While Kirschling has no precedential value in this case, Kirschling actually supports the conclusion that no contract existed between Dr. Perrone and the ESC. In Kirschling, the Court found that an enforceable contract existed as between a school district and a principal where the school board had appointed the plaintiff to a

principal position, in writing, and enclosed a *standard* "Delaware School Administrators Contract" that had all of the terms completed except salary; but the salary was "*[a]ccording to state and local salary schedules*" and was not open to further negotiation or ambiguity. Kirschling, 687 F. Supp. at 931 (emphasis added). The Court also found that there were no other conditions preventing the formation of the contract. Id. at 931-932. Unlike the contract in Kirschling, the offer to Dr. Perrone was *not* subject to a standard contract, the compensation for the contract term had *not* been determined, additional terms were *still to be negotiated,* and the contract formation *was contingent* upon successful future negotiations. To ignore this last requirement would be to deprive the ESC the limitations of its offer, which was meant to protect public funds, and the ability to approve a final contract as set forth under M.G.L. c. 71, § 41. See also Ferrera, 895 F.2d 818 at 822 (citing Kirschling and finding that the statute of frauds was not satisfied because the writings did not show an agreement on "the salary and other compensation provisions" of the purported contract).

Based on the foregoing, providing Dr. Perrone with all reasonable inferences, Dr. Perrone did not have a contract with the ESC as a matter of law.

### 4. The Plaintiff Cannot Also Rely On Estoppel to Revive His Breach of Contract Claim.

Massachusetts law recognizes that the estoppel doctrine can vitiate the Statute of Frauds bar on oral employment agreements in excess of a year or be triggered to find that an agreement exists between parties in the private sector. See Hoffman v. Optima Sys., Inc., 683 F. Supp. 865, 869 (1988); McAndrew v. School Comm. of Cambridge, 20 Mass. App. Ct. 356, 359 (1985). Principles of estoppel, however, do not generally apply against the government and, as set forth below, estoppel should not apply to this action. See Heckler v. Community Health Servs., Inc., 467 U.S. 51, 66 (1984); Falcone v. Pierce, 864 F.2d 226, 228 (1st Cir. 1988); LaBarge v. Chief Administrative Justice of the Trial Court, 402 Mass. 462, 468 (1988); Gamache v. Mayor of No. Adams, 17 Mass. App. Ct. 291, 294 (1983); McAndrew, 20 Mass. App. Ct. at 360-361; Stadium Manor, Inc. v. Division of Admn. Law Appeals,

23 Mass. App. Ct. 958, 961-963 (1987). "The reluctance to extend estoppel against the government stems from concern over public fiscal policy, sovereign immunity and administrative efficiency." Harrington v. Fall River Hous. Auth., 27 Mass. App. Ct. 301, 308 (1989).

First, "[e]stoppel is not applied to government acts where to do so would frustrate a policy intended to protect the public interest." LaBarge, 402 Mass. at 468; McAndrew, 20 Mass. App. Ct. at 361 ("Application of estoppel principles to bind the defendants to a contract of employment with the plaintiff would, in this case, run counter to express judicial as well as legislative policy."). Under Massachusetts law, local school committees are the final policymaker for schools. See M.G.L. c. 71, § 37 ("The school committee in each city and town . . . shall have the power to select and to terminate the superintendent, shall review and approve budgets for public education in the district, and shall establish educational goals and policies for the schools in the district consistent with the requirements of law and statewide goals and standards established by the board of education."). School committees also have the sole power to enter into contracts with superintendents. See id. Application of equitable estoppel in this action would negate these statutory powers. It would defeat the important public interest of placing contracting and budgetary powers with local school committees in favor of a court dictating with whom the school committee contracts, thereby exposing the schools to unapproved expenses without regard to the school's overall budget or the committee's policy powers. See id. It would also set aside ESC's ability to establish its educational goals and policies.  Therefore, applying equitable estoppel is inappropriate in this case. Id. at 468-469.

Second, the Plaintiff has not alleged facts that support the application of estoppel. The "three traditional elements are: first, a material misrepresentation of a party who had reason to know of its falsity; second, reasonable reliance upon the misrepresentation; and third, some disadvantage to the party seeking to assert estoppel fairly traceable to the misrepresentation." Harrington, 27 Mass. App. Ct. at 308 (internal quotations omitted).  Here, a verbal offer was extended with the express caveat that

the parties negotiate a final contract. A final contract was never agreed upon, all of which would affect the public purse. Until the parties agree to a final contract that is approved by the ESC, the Plaintiff negotiates at his peril. See, e.g., Pavone v. City of Worcester, 2006 WL 2424706, at *3 (Mass. Super. July 3, 2006), aff'd, 78 Mass. App. Ct. 1117, 939 N.E.2d 135 (2010) ("those who contract with the officers or agents of a governmental agency must, at their peril, see to it that those officers or agents are acting within the scope of their authority") (quoting Bowers v. Bd. of Appeals of Marshfield, 16 Mass. App. Ct. 29, 34 (1983). Based on the foregoing, the Plaintiff cannot show any false representation by the ESC (or its members), or that he reasonably relied on any representation such that a contract was formed. Dr. Perrone knew that a final contract would need to be negotiated and approved by the ESC. As such, there was no "reasonable reliance" that a contract had been formed. To further clarify, if there was a contract, then no further negotiations would have been required. But that was not the case as both parties knew additional negotiations towards a final contract were necessary. This fact places Dr. Perrone's emails before the March 30th meeting in context: he was asking for more compensation (albeit through different contractual provisions). As such, the only reliance created was that there was no final contract and there is nothing inequitable about this situation. Gamache, 17 Mass. App. Ct. at 294 ("In order to work an estoppel it must appear that one has been induced by the conduct of another to do something different from what otherwise would have been done and which has resulted to his harm and that the other knew or had reasonable cause to know that such consequence might follow. But the doctrine of estoppel is not applied except when to refuse it would be inequitable.")

Dr. Perrone's citation in the Complaint to Frederick v. ConAgra, 713 F. Supp. 41, 45-46 (D. Mass. 1989), Boothby v. Texon, Inc., 414 Mass. 468 (Mass. 1993), and Runkle v. Burrage, 202 Mass. 89 (Mass. 1909), does not change this analysis. (¶ 72). None of these cases addressed a contract with a government entity nor do they support the finding of estoppel against a government entity. They also do not support the application of estoppel on the merits. Runkle is inapplicable because it relates to the

rescission of a contract – which did not occur here as there was no contract to rescind. 202 Mass. at 98-99; see Lyons v. Rainbow Recording Corp., 1 Mass. App. Ct. 783, 784 (1974) (noting that a party may sue in equity to rescind a contract and in law for damages).

Finally, "[t]his court and Massachusetts state courts have found, however, that estoppel only applies in cases where the plaintiff pleads both breach of contract and an additional claim based on fraud or deceit." Lahlou, 874 F. Supp. 2d at 11 (citing Chmura v. Ingham, MIC Tech. Corp., 1990 WL 117917, at *1 (D. Mass. Aug. 3 1990) ("The cases plaintiff relies on to support his estoppel theory deal with claims not only of breach of contract but of fraud and deceit as well.")); McTernan v. Haley & Aldrich, Inc., 1995 WL 1146823, at *5 (D. Mass. Sept. 25, 1995) ("Despite the plaintiff's argument, the court recognizes Chmura v. Ingham, No. 89–2826–MC (D. Mass. Aug. 1990) as persuasive authority for the proposition that the plaintiff's estoppel theory should only be applied in cases where there are claims of fraud and deceit as well as breach of contract."). Here, the Plaintiff has not asserted a claim for fraud nor are there any facts that would support such a claim. See Fed. R. Civ. P. 9(b).

### C. Count II: Breach of the Covenant of Good Faith and Fair Dealing against the City and ESC Must Be Dismissed.

In Massachusetts, the covenant of good faith and fair dealing is implied *in every contract*. See Tufankjian v. Rockland Trust Co., 57 Mass. App. Ct. 173, 177 (2003) (citing Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 473 (1991)). This covenant ensures that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. See Anthony's Pier Four, Inc., 411 Mass. at 471. In order to demonstrate a claim for the breach of the covenant of good faith and fair dealing, "the plaintiff must show that there existed an enforceable contract between the two parties." Learning Express, Inc. v. Ray–Matt Enters., Inc., 74 F. Supp. 2d 79, 84 (1999) (quoting Laser Labs, Inc., v. ETL Testing Labs., Inc., 29 F. Supp. 2d 21, 24 (D. Mass. 1998) (O'Toole, J.)); see Moore v. Marty Gilman, Inc., 965 F. Supp. 203, 222 n. 16 (D. Mass. 1997) (Karol,

M.J.) ("A contract is a necessary element of ... a claim of a breach of the implied covenant of good faith and fair dealing." (citation omitted)).

For the reasons set forth in Section B, <u>supra</u>, only the ESC should be a party to this claim. See M.G.L. c. 71, § 41. Regardless, this claim should be dismissed because there was no enforceable contract and, therefore, the claim does not exist. See Section B, <u>supra</u>.

### D. <u>Count III: Violation of 42 U.S.C. § 1983 for Deprivation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights against City and ESC Should Be Dismissed.</u>

The Fourteenth Amendment provides "no State shall … deprive any person of life, liberty or property without due process of law." U.S. Const. amend XIV. The procedural component of the Due Process Clause requires that, before an individual is deprived of a constitutionally protected property interest by government action, he must be given "notice and opportunity for hearing appropriate to the nature of the case." <u>Cleveland Bd. Of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985). "The Due Process Clause guarantees individuals procedural protections from state actions that deprive those individuals of their property interests in certain entitlements and benefits." <u>Clukey v. Town of Camden</u>, 717 F.3d 52, 55 (1st Cir. 2013).

Because a municipality cannot be held vicariously liable for the conduct of its officials or employees under Section 1983, a plaintiff's civil rights claim against a municipality is governed by the familiar analysis of <u>Monell v. Dep't of Social Servs. of City of N.Y.</u>, 436 U.S. 658 (1976). "Under Section 1983, it is well established that a municipality is not liable for the actions of its employees simply by virtue of the employment relationship." <u>Freeman v. Town of Hudson</u>, 849 F. Supp. 2d 138, 149 (D. Mass. 2012); see also <u>Marrero-Rodriguez v. Municipality of San Juan</u>, 677 F.3d 497, 503 (1st Cir. 2012) ("Nor may the Municipality be sued under § 1983, as pled, on a *respondeat superior* theory that it is liable because it employs the individual defendants."); <u>Allen v. Town of E. Longmeadow</u>, No. 17-CV-30041-MGM, 2018 WL 1152098, at *11 (D. Mass. Feb. 9, 2018), <u>report and recommendation</u>

adopted, No. 17-CV-30041-MGM, 2018 WL 1141361 (D. Mass. Mar. 2, 2018) (dismissing Section 1983 claim against a municipality).

Thus, in order to prevail under Section 1983 against the City or the ESC, the Plaintiff must demonstrate that his harm was caused by a constitutional violation and that these two defendants were responsible for such violation. See Collins v. City of Harker Heights, Tex., 503 U.S. 115, 121 (1992). In so doing, a plaintiff bears the burden of showing that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997) (emphasis in original) (quoting Monell, 436 U.S. at 694).

The Plaintiff has alleged that he had a duly enforceable employment contract with the ESC and that this contract could not be terminated "without providing a notice of the reason(s) for the termination of the contracts, as well as a meaningful opportunity to respond, typically in the form of a predetermination hearing." (¶ 17). For purposes of this motion only, the Defendants reserve on the issue as to whether the ESC's single act here can serve as a basis for liability under 42 U.S.C. § 1983. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (holding that government policy or custom may be established by "a single decision by municipal policymakers under appropriate circumstances"); Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016) (same). For purposes of this motion only, the City and ESC will focus on the lack of any claim based on a deprivation of a property interest without due process.

### 1. The Plaintiff Was Not Entitled To The Due Process Alleged In The Complaint.

The first step in procedural due process analysis is to "ask[ ] whether there exists a … property interest which has been interfered with by the State." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Loudermill, 470 U.S. at 546 (noting that where the plaintiff has a protected property interest *in continued employment*, the plaintiff is entitled to a pretermination hearing, including "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to

present his side of the story"); see Chmielinski v. Massachusetts, 513 F.3d 309, 316 (1st Cir. 2008); Mard v. Town of Amherst, 350 F.3d 184, 188 (1st Cir. 2003). "The hallmark of property, the [Supreme] Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982). In general, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). "The critical inquiry in a procedural due process case involving a right of employment is whether the plaintiff has a legitimate claim of entitlement grounded in state law, not whether one is 'already employed.'" Clukey, 717 F.3d at 55 (citing Paul v. Davis, 424 U.S. 693, 710 (1976) (noting that the property interests protected by the Due Process Clause "attain this constitutional status by virtue of the fact that they have been initially recognized by state law")); see also Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 101 (1st Cir. 2002) (citations omitted) ("In order to maintain a constitutional due process claim arising out of the termination of his employment, a public employee must first demonstrate that he has a reasonable expectation, arising out of a statute, policy, rule or contract, that he will continue to be employed.").

Here, Dr. Perrone's claim in Count III stumbles at the gate because he does not have a cognizable property interest because he did not have an enforceable contract for employment with the ESC. An individual without an enforceable contract cannot establish a property right protected by the Constitution because there is no legitimate claim of entitlement to the position. See Loudermill, 470 U.S. at 538; Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). The Supreme Court "long ago recognized the 'settled principal that government employment, in the absence of legislation, can be revoked at the will of the appointing officer.'" Engquist v. Or. Dep't of Agric., 553 U.S. 591, 606 (2008) (citation omitted); see also Ferlisi v. Galvin, 787 F. Supp. 2d 111, 113 (D.

Mass. 2011) (Collings, M.J.) ("Absent such a property right, a procedural due process claim must fail because no process would legally be due prior to altering the plaintiff's employment status."); New Jersey Ass'n of Sch. Administrators v. Davy, No. CIV A 08-4086(JAP), 2008 WL 5074794, at *7 (D.N.J. Nov. 25, 2008) ("anticipated employment terms are not protected by due process because there would be no 'taking' of a recognized 'property interest'").  Here, Dr. Perrone did not have a property interest for the purposes of this constitutional analysis: the offer expressly required successful contract negotiations to a final contract and the parties were still negotiating when the offer was rescinded. Indeed, Dr. Perrone made a number of demands to the ESC and the ESC had the discretion to accept or deny Dr. Perrone's demands and whether to approve the overall contract. See Town of Castle Rock, 545 U.S. at 756.

Finally, Dr. Perrone's reliance on Kirschling v. Lake Forest School District is again misplaced. The Due Process claim survived because the Court had concluded that "the contract created a protected property interest." 687 F. Supp. at 933; id. at 934 ("The Court found this contract valid under state law."). That is not the case here as there was no valid contract under Massachusetts law. See Logan, 455 U.S. at 430. Further, unlike the school board policies alleged in Kirschling, the Complaint is devoid of any statutory or other established policies that required a certain process be followed so as to create any sort of property interest. Rather, the parties were engaging in the pre-contract negotiation process, id. at 933, and because there was no contract between Dr. Perrone and the ESC, Dr. Perrone was not due any further process. Id. at 934. The Plaintiff, therefore, fails to state a claim.

E.  **Counts IV-VIII: Violation of 42 U.S.C. § 1983 For Deprivation Of Plaintiff's Fourteenth Amendment Procedural Due Process Rights Against The Individual Defendants Should Be Dismissed.**

With respect to the Individual Defendants, "[t]o state a claim under Section 1983, a plaintiff must show [1] that the challenged conduct was committed by a person acting under color of state law and [2] that the conduct worked a deprivation of rights, privileges, or immunities secured by the

Constitution or federal law." <u>Diaz v. Devlin</u>, 229 F. Supp. 3d 101, 109 (D. Mass. 2017) (citing 42 U.S.C. § 1983; <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997)). "[T]o establish a procedural due process claim under section 1983, a plaintiff 'must allege first that [he] has a property interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without constitutionally adequate process.'" <u>Marrero–Gutierrez v. Molina</u>, 491 F.3d 1, 8 (1st Cir. 2007) (internal citation and quotation marks omitted).

### 1. The Individual Defendants Cannot Be Liable In Any Capacity.

To the extent that the Plaintiff attempts to assert a Section 1983 claim against the Individual Defendants in their official capacity, any such claim must fail. See <u>McGuigan v. Conte</u>, 629 F. Supp. 2d 76, 82 (D. Mass. 2009) (quoting <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991)) ("[O]fficial–capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Because an official capacity claim against the Individual Defendants constitutes another way of asserting a Section 1983 claim against the City or ESC, which is addressed above, it must be dismissed as to the Individual Defendants.

Regardless, the Complaint is devoid of any alleged facts that the Individual Defendants took any action that would create liability in their individual capacities and, therefore, the claim against each of them should be dismissed. (¶¶ 20, 28, 33, 36, 37, 38, 39, 41, 45, 46, 48, 51, 90-92, 95-97, 100-102, 105-107, 110-112, 115-118, 121-124, 127-130, 133-136, 139-142). Indeed, the Individual Defendants comprise the majority of the ESC and voted to rescind the offer to Dr. Perrone. They acted as the ESC.[11] In <u>Kirschling</u>, the plaintiff sued two school board members in their individual capacities. 687 F. Supp. at 929-930. The two members, however, represented to the full school board that the plaintiff

---

[11] The Plaintiff's reference to violations of the Open Meeting Law in Paragraphs 54-58 of the Complaint are simply a red-herring. Even according to the Complaint, the only issue found by the Attorney General was that the ESC should have convened in regular session and voted to move to executive session. (¶ 56). This has no causal relationship to the allegations of the Complaint.

had withdrawn from his candidacy (which had not occurred), which caused the full school board to vote to accept the withdrawal. Id. at 930. Here, there are no such similar allegations.

### 2. The Plaintiff Has Not Alleged A Constitutionally Protected Property Interest.

For the reasons set forth in Section B and Section D, supra, which are referred to and incorporated herein but not repeated, Dr. Perrone has not alleged facts that support a finding of a property interest, and therefore he cannot show any constitutional deprivation.

### 3. The Individual Defendants Are Entitled To Qualified Immunity.

The doctrine of qualified immunity protects public officials such as the Individual Defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Wood v. Strickland, 420 U.S. 308, 322 (1975) (holding that school board members sued in their individual capacity are entitled to qualified immunity against section 1983 claims). Qualified immunity is determined according to a two-part test. Pearson v. Callahan, 555 U.S. 223 (2009); Maldonado v. Fontanes, 568 F.3d 263, 268-269 (1st Cir. 2009). Under Pearson and Maldonado, the relevant inquiries are (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. Pearson, 555 U.S. at 224; Maldonado, 568 F.3d at 269. Although conducting this two-step analysis in sequence is sometimes advisable because doing so "promote[s] the development of constitutional precedent," courts have discretion to avoid the direct constitutional question when a matter may be resolved at the second step. Maldonado, 568 F.3d at 269-270. "The second prong, in turn, has two elements: 'We ask (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his conduct violated the right.'" Id. (quoting Mlodzinski v. Lewis, 648 F.3d 24, 32-33

(1st Cir. 2011)).

For the reasons set forth above in Section B and Section D, <u>supra</u>, Dr. Perrone has not set forth any facts to make out a violation of a constitutional right. Even if he did, the right at issue was not clearly established in that none of the Individual Defendants would have understood that voting to rescind an offer prior to successful contract negotiations violated a clearly established constitutional right, especially where the ESC had voted specifically to condition contract formation on successful negotiations. Further, at the time, Dr. Perrone had demanded different financial terms, and the ESC was meeting about the terms in anticipation of further negotiations. Indeed, as set forth above, case law supports the premise that absent an enforceable contract, a candidate for a superintendent position does not have any constitutional rights in their anticipated employment. <u>Kirschling</u>, which the Plaintiff relies on, supports the same conclusion. Unlike Dr. Perrone, the plaintiff in <u>Kirschling</u> had a valid, enforceable contract, which vested a principal with certain rights before termination of the contract. <u>Id.</u>, 687 F. Supp. at 334.

To the contrary, there are no legal contours relating to Due Process rights such that a reasonable school committee member would have understood that voting to withdraw from contract negotiations violated the Plaintiff's Due Process rights, or that, in this particular factual context, a reasonable school committee member would have understood that his or her conduct violated the right. Up until a contract is enforceable, there is no property interest to require due process.

### F. <u>Count IX-XIII: Violation Of The MCRA For Deprivation Of Plaintiff's Fourteenth Amendment And State Constitutional Procedural Due Process Rights Against Individual Defendants Should Be Dismissed.</u>

The MCRA provides that "[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, has been interfered with, or attempted to be interfered with, … may institute and prosecute in his own name and on his own behalf a civil action…." M.G.L. c. 12, § 11I. MCRA is the

state analog to § 1983 and provides a cause of action for an individual whose rights under the Constitution or laws of either the United States or the Commonwealth of Massachusetts have been interfered with by "threats, intimidation or coercion." See M.G.L. c. 12, §§ 11H and 11I; D'Ambrosio v. City of Methuen, Massachusetts, 2019 WL 1438050, at *14 (D. Mass. Mar. 31, 2019). For purposes of this motion, the MCRA, however, does not provide any substantive rights, rather, it is a means to redress interference with rights that are granted by other state or federal laws. See Hobson v. The McLean Hospital Corp., 402 Mass. 413, 418 n.6 (1988).

In order to recover under M.G.L. c. 12, § 11I, plaintiffs must show "(1) [their] exercise or enjoyment of rights secured by the Constitution or the laws of either the United States or the Commonwealth, (2) were interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Murphy v. Town of Duxbury, 40 Mass. App. Ct. 513, 518 (1996) (quoting Freeman v. Planning Bd. of West Boylston, 419 Mass. 548, 564 (1995)). The SJC has recognized that in enacting the MCRA, "the Legislature did not intend to create 'a vast constitutional tort,' and thus explicitly limited the Civil Rights Act's remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion." Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989) (quoting Bell v. Mazza, 394 Mass. 176, 182-183 (1985)). In applying this law, Massachusetts courts employ an objective, reasonable person standard in determining whether a defendant's conduct amounts to "threats, intimidation, or coercion." See Glovsky v. Roche Bros. Supermarkets, 469 Mass. 752, 763 (2014). A claim under the MCRA is properly dismissed when the allegations in the complaint fail to satisfy this standard. See id. (citing Brum v. Dartmouth, 428 Mass. 684, 708 (1999)).

To the extent that the allegations simply allege a direct deprivation of rights, such claims do not support one under the MCRA. See Longval v. Comm'r of Correction, 404 Mass. 325, 333 (1989) ("Not every violation of law is a violation of the [MCRA]. A direct violation of a person's right does not by

itself involve threats, intimidation, or coercion and thus does not implicate the Act."); id. at 333-334 (noting that direct violation of person's rights does not by itself involve coercion; even unlawful conduct lacks this quality when all it does is take someone's rights away directly); Currier v. Nat'l Bd. of Med. Examiners, 462 Mass. 1, 13 (2012) ("[T]he direct violation of a right by itself is not the equivalent of [threats, intimidation or] coercion."). Further, a plaintiff cannot rely on lawful actions to support a claim for violation of the MCRA. In Sena v. Commonwealth, 417 Mass. 250 (1994), where the Supreme Judicial Court (the "SJC") was addressing the use of threats by a police officer to obtain a warrant, the Court concluded that "*threatening a 'plaintiff['s] arrest through lawful means ... is not actionable under § 111.*'" Id. at 263 (emphasis added).

The SJC "has held that MCRA claims are subject to the same standard of immunity … that is used for claims asserted under § 1983." Raiche v. Pietroski, 623 F.3d 30, 40 (1st Cir. 2010). Therefore, the qualified immunity analysis applies equally to the plaintiff's claims under Section 1983 and their claims under the MCRA. See MacFarlane v. Town of E. Bridgewater, 110 F. Supp. 3d 310, 322 (D. Mass. 2015).

Here, the Plaintiff has alleged claims against the Individual Defendants for violation of the MCRA by using threats, intimidation and coercion to deprive him of his Due Process Rights under the Fourteenth Amendment and Articles X of the Massachusetts Declaration of Rights.[12]  (¶¶ 116, 122, 128, 134, 140).

### 1. The Claims Against the Individual Defendants Must Be Dismissed Because The MCRA Does Not Authorize Any Such Claim.

It is settled law the MCRA does not apply to municipalities or public officials or employees in their

---

[12] Article X, part. 1 provides that "[e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws." See Sch. Comm. of Hatfield v. Bd. of Ed., 372 Mass. 513, 514, 363 N.E.2d 237, 238 (1977) ("The protection afforded property interests by both provisions is subject to the same analysis" under both Federal and State Due Process Clauses).

official capacity. See <u>Howcroft v. City of Peabody</u>, 51 Mass. App. Ct. 573, 592-593 (2001). As such, the Town must be dismissed because a municipality is not a "person" covered by the MCRA. See <u>id.</u> at 575-576.

With respect to the Individual Defendants, the outcome must be the same. While the Complaint asserts MCRA claims against these defendants in their Individual Capacity, Dr. Perrone does not allege that the Individual Defendants acted in any manner other than their official capacity. (¶¶ 20, 28, 33, 36, 37, 38, 39, 41, 45, 46, 48, 51, 90-92, 95-97, 100-102, 105-107, 110-112, 115-118, 121-124, 127-130, 133-136, 139-142). Without any such allegations, these counts are barred by <u>Howcroft</u> and the counts against them must be dismissed. Furthermore, the MCRA is devoid of any language waiving the Individual Defendants' immunity such that these claims can be asserted in any capacity. "The Massachusetts Civil Rights Act was enacted in response to deprivations of secured rights *by private individuals* using violence or threats of violence." <u>Planned Parenthood League of Mass., Inc. v. Blake</u>, 417 Mass. 467, 473 n. 8, <u>cert. denied</u>, 513 U.S. 868 (1994) (emphasis added); <u>Sarvis v. Boston Safe Deposit & Trust Co.</u>, 47 Mass. App. Ct. 86, 96 (1999) ("There is nothing in the MCRA to indicate clearly that the Legislature did not intend the term 'person' to take on the statutory definition appearing in G.L. c. 4, § 7, Twenty-third").  Even applying <u>Howcroft</u>, which allows for claims against individual public officials, there are no allegations in this complaint that they acted in any non-official or private capacity.  (¶¶ 20, 28, 33, 36, 37, 38, 39, 41, 45, 46, 48, 51, 90-92, 95-97, 100-102, 105-107, 110-112, 115-118, 121-124, 127-130, 133-136, 139-142). And, recently, the Massachusetts Appeals Court stated that, at the pleading stage, it is the plaintiff's burden to allege facts that a public employee was acting outside the scope of their employment or office. See <u>Doyle v. City of Quincy</u>, 104 Mass. App. Ct. 761, 764-766 (2024). Here, all of the actions alleged occurred within noticed meetings of the ESC or in the performance of the Individual Defendants' duties as public officials. There is nothing in the text of the MCRA that would support a claim against the Individual Defendants under the statute, or that they fall

within that category of "private individuals using violence or threats of violence" to deprive others of secured rights. The remedy, if any, is under Section 1983, which relates to state actors acting under color of state law.

If the Court does not adopt the foregoing, the claims against the Individual Defendants must be dismissed in their official capacities and to the extent that there are no allegations of any conduct outside of their official capacities. See Maraj v. Massachusetts, 836 F.Supp.2d 17, 30 (D. Mass. 2011) ("Plaintiff's MCRA claims ... against the individual officers in their official capacities, fail on the threshold ground that the Commonwealth and its agencies cannot be sued under the MCRA."); Santiago v. Keyes, 890 F. Supp. 2d 149, 157 (D. Mass. 2012) (same).

## 2. The Plaintiff Has Failed To Allege Any Deprivation of Rights or Threats, Intimidation or Coercion.

For the reasons set forth in Section B and Section D, supra, Dr. Perrone has failed to allege that he was deprived of any rights protected by the MCRA. Moreover, the Plaintiff's claims under the MCRA are merely a recitation of his claims under Section 1983. The claims under Section 1983 are for direct deprivations and, therefore, are not actions protected by the MCRA. See Longval, 404 Mass. at 333; Nicholas B. v. Sch. Comm. of Worcester, 412 Mass. 20, 24 (1992) ("The school committee's allegedly unlawful action here was direct and immediate. Even if that action had been unlawful, it contained no threat, intimidation, or coercion."). In other words, the constitutional right at stake is the right to be free from violations of due process. "If the statute applies, it would mean that the defendants [violated the due process rights of the] plaintiff in order to cause the plaintiff to give up his [due process rights]…. Such a construction would torture the statute well beyond its plain meaning, and therefore the Court concludes that it simply does not apply to the present facts." Goddard v. Kelley, 629 F. Supp. 2d 115, 128-129 (D. Mass. 2009).

Even if this was not a direct deprivation, civil rights deprivations *and* threats must be distinguished

from civil rights deprivations caused *by* threats, intimidate or coercion. Only the latter will support recovery under MCRA. See <u>Orwat v. Maloney</u>, 360 F.Supp.2d 146, 165 (D. Mass. 2005); <u>Columbus v. Biggio</u>, 76 F.Supp.2d 43, 54 (D. Mass. 1999). "Threat" is defined as "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." <u>Planned Parenthood League of Massachusetts, Inc. v. Blake</u>, 417 Mass. 467, 474, <u>cert. den.</u>, 513 U.S. 868 (1994). "Intimidation" involves "putting [another] in fear for the purpose of compelling or deterring conduct." <u>Id.</u> "Coercion" is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." Stated differently, "coercion" is the active domination of another's will, or the use of physical, economic or moral force to compel another to act or assent, or to refrain from acting or assenting. <u>Id.</u> Here, the Complaint is devoid of any conduct that could supports a claim for a deprivation of rights caused by any threat, intimidation or coercion, or any sort of conduct that has been recognized as a threat, intimidation or coercion under the MCRA. <u>Orwat</u>, 360 F.Supp.2d at 165.

Further, it is settled law that *lawful* actions are not actionable under the MCRA. See <u>Sena</u>, 417 Mass. at 263; see also <u>Finamore v. Miglionico</u>, No. 4:17-CV-40122-DHH, 2020 WL 5100763, at *4 (D. Mass. June 24, 2020), <u>aff'd,</u> 15 F.4th 52 (1st Cir. 2021) ("Given the court's conclusion that probable cause supported the disturbing the peace charge, Finamore's § 1983 false arrest claim fails in toto."). Here, the ability to end the negotiations of a contract was lawful and, therefore, cannot serve as a basis for liability under the MCRA.

### 3.   <u>The Individual Defendants Are Entitled to Qualified Immunity</u>.

For the reasons set forth in the prior section regarding Section 1983, the officers are entitled to qualified immunity as to the claims pursuant to the MCRA. See <u>MacFarlane</u>, 110 F. Supp. 3d 310 at 322.

G. **Count XIV: The Plaintiff's Claim For Defamation Against The Individual Defendants Should Be Dismissed.**

"Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." Correllas v. Viveiros, 410 Mass. 314, 319 (1990). A plaintiff alleging defamation must ordinarily establish five elements: (1) that the defendant published a written statement; (2) of and concerning the plaintiff; that was both (3) defamatory, and (4) false; and (5) either caused economic loss, or is actionable without proof of economic loss. See Stanton v. Metro Corp., 438 F.3d 119, 124 (1st Cir. 2006) (citing White v. Blue Cross & Blue Shield of Mass., Inc., 442 Mass. 64 (2004)); Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 42 (1st Cir. 2006) (quoting McAvoy v. Shufrin, 401 Mass. 593 (Mass. 1988)); see also Phelan v. May Dept. Stores Co., 443 Mass. 52, 56-57 (2004). The threshold issue of whether a statement is reasonably susceptible of a defamatory meaning is determined as a matter of law by an examination of the statement in its totality in the context in which it was made. Foley v. Lowell Sun Puhl. Co., 404 Mass. 9, 11 (1989).

1. **The Claims For Defamation Against The Individual Defendants Must Be Dismissed Pursuant To The Massachusetts Tort Claims Act.**

The claim for defamation must be dismissed as to all of the Individual Defendants any statements attributed to these defendants are in their official capacity, for which there is no liability under the Massachusetts Tort Claims Act, M.G.L. c. 258 et seq. (the "MTCA"). Tort claims involving a public employer and its employees are controlled by the provisions of the MTCA. See Irwin v. Town of Ware, 392 Mass. 745, 767 (1984). The MTCA provides the exclusive remedy against public employers for "personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances...." M.G.L. c. 258, § 2; see also Doe v. Town of Blandford, 402 Mass. 831, 834 (1988). This remedy "shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer...." M.G.L. c. 258, § 2;

Irwin v. Comm'r of Dep't of Youth Servs., 388 Mass. 810, 821 (1983). The MTCA bars claims against public employees for defamation unless their actions or statements are made outside of the scope of their office or employment. See M.G.L. c. 258, §§ 2, 10(c); Howcroft, 51 Mass. App. Ct. at 596 (intentional tort claims against individual defendants in their official capacities properly dismissed); Saxonis v. Lynn, 62 Mass. App. Ct. 916, 918 (2004) (same); Doyle, 104 Mass. App. Ct. at 764 (barring claim against public employee in their individual capacity).

"The immunity afforded to public employees by G.L.c. 258, § 2, encompasses claims for negligence, gross negligence, and reckless conduct." Doyle, 104 Mass. App. Ct. at 764; see Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 628-629 (2012) ("Assuming the other elements of defamation are present, the publication of a false statement about a private party is equally tortious whether it is made intentionally, recklessly, or negligently."). In Doyle, the Appeals Court held that because all of the claims fell within the immunity afforded to public employees under the MTCA, the public employees "are immune to the extent that the claims are based on alleged conduct within the scope of their office or employment." 104 Mass. App. Ct. at 764. "On the other hand, the claims may proceed if their alleged conduct occurred outside the scope of their office or employment, because the MTCA does not immunize public employees for such conduct." Id. "That the plaintiff[] sued [the Individual Defendants] in their individual capacity does not resolve the scope of the office or employment issue." Doyle, 104 Mass. App. Ct. at 764. The Appeals Court wrote:

> Although this averment indicates a belief (at least, in the alternative, see infra) that these defendants acted outside the scope of their office or employment, conclusory allegations and labels are inadequate to plausibly suggest a plaintiff's entitlement to relief. See Iannacchino [v. Forde Motor Co.], 451 Mass. [623,] at 636 [(2008)]. Rather, to proceed with their claims against [the public employees], the plaintiffs' allegations must plausibly suggest that each defendant's conduct occurred outside "the scope of his office or employment" and is therefore not shielded by the immunity that public employees usually receive under G. L. c. 258, § 2. [Footnote omitted]

> "The scope of an employee's employment is not construed restrictively." Clickner

> v. Lowell, 422 Mass. 539, 542 (1996), quoting Howard v. Burlington, 399 Mass.
> 585, 590 (1987). In determining whether public employees acted within the scope
> of their employment, courts "apply the common-law test, which is based on
> principles of vicarious liability, respondeat superior, and agency, and which
> 'considers whether the act was in furtherance of the employer's work'" (footnote
> omitted). Berry [v. Commerce Ins. Co.], 488 Mass. [633,] at 636-637 [(2021)],
> quoting Clickner, supra. Courts consider "three factors, each of which must be met
> to sustain the conclusion that the employee's conduct fell within the scope of
> the employment: (1) 'whether the conduct in question is of the kind the employee is
> hired to perform'; (2) 'whether it occurs within authorized time and space limits';
> and (3) 'whether it is motivated, at least in part, by a purpose to serve the
> employer.' " Berry, supra at 638, quoting Clickner, supra.

Id. at 764-765. The Appeals Court concluded that the plaintiff in Doyle had failed to plausibly suggest

that one of the defendants acted outside the scope of his employment, finding that the alleged conduct

by the one defendant, a police chief, was "in furtherance of" his duties as the police chief. The Appeals

Court wrote:

> For example, the complaint alleges that Keenan inadequately trained officers
> assigned to details at private establishments, failed to promulgate policies and
> procedures on detail assignments, and did not investigate or discipline officers who
> abandoned their assigned posts. Keenan is not alleged to have done work he was
> not hired to perform by the city, acted outside the authorized limits of his role as
> chief, or been motivated entirely by a purpose other than serving the city.

Id. at 765-766.

Here, the allegations of the Complaint note that each of the Individual Defendants were members

of the ESC, and that Mayor LaChapelle was also the City's mayor. (¶¶ 8-12). Like the Complaint in

Doyle, Dr. Perrone similarly fails to allege that any of the Individual Defendants did work they were

not elected to do or acted outside their roles as members of the School Committee. To the contrary, the

Individual Defendants were engaged in their statutorily charged duties of hiring a superintendent,

overseeing EPS' budget and setting policy for the school department. See M.G.L. c. 71, §§ 37, 41;

compare with Doyle, 104 Mass. App. Ct. at 766-767 (finding allegations of "an informal arrangement"

to provide officers as bouncers at private establishment sufficient for pleading stage). (¶¶ 20, 28, 33,

36, 37, 38, 39, 41, 45, 46, 48, 51, 90-92, 95-97, 100-102, 105-107, 110-112, 115-118, 121-124, 127-

130, 133-136, 139-142).

Because there are no allegations, rather than conclusory statements, in the Complaint that plausibly suggests that any of the Individual Defendants acted outside the scope of their office, this claim fails. Id. at 764-766.

### 2.    The Complaint Is Devoid Of Allegations Of Defamation.

Defamation consists of "four elements: first, the defendant made a statement, of and 'concerning the plaintiff, to a third party'; second, the 'statement could damage the plaintiff's reputation in the community'; third, the defendant was at fault for making the statement and fourth, the statement caused economic loss or, in four specific circumstances, is actionable without economic loss.  Scholz v. Delp, 473 Mass. 242, 249 (2015). "Furthermore, to be actionable, the statement must be one of fact rather than of opinion." Id. at 249. "Statements of pure opinion are constitutionally protected," King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987), cert. denied, 485 U.S. 940, and 485 U.S. 962 (1988), "[b]ut there is no constitutional value in false statements of fact." National Ass'n of Gov't Employees, Inc. v. Central Broadcasting Corp., 379 Mass. 220, 227 (1979), cert. denied, 446 U.S. 935 (1980), quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-340 (1974) ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas"). Whether a statement is a factual assertion, or an opinion is a question of law if the statement unambiguously constitutes either fact or opinion, and a question of fact if the statement reasonably can be understood both ways. Scholz, 473 Mass. at 240 (internal quotations omitted).

First, the Plaintiff's claim fails because the Complaint fails to identify the exact statements upon which this claim is based or the statement that is attributed to each of the Individual Defendants. "To properly allege defamation, ... plaintiff must specifically identify the allegedly false statement." See Kelleher v. Lowell Gen. Hosp., 98 Mass. App. Ct. 49, 53 n.2 (2020) (citation omitted) (stating that "allegation[s] that the defendant made statements that 'cast the plaintiff in a negative light,' but that

does not identify a specific statement, is not sufficient"); see also <u>Johnson v. Allen</u>, No. 22-CV-10907-DJC, 2022 WL 16823008, at *3 (D. Mass. Nov. 8, 2022). Based on the foregoing, the Court cannot engage in the analysis of whether the statement is reasonably susceptible of a defamatory meaning. See <u>Lemelson v. Bloomberg LP</u>, 253 F. Supp. 3d 333, 339 (D. Mass. 2017) (quoting <u>Foley v. Lowell Sun Pub. Co.</u>, 404 Mass. 9, 11 (1989)); see <u>Damon v. Moore</u>, 520 F.3d 98, 103 (1st Cir. 2008) (stating that at the motion to dismiss stage "[t]he court is not called upon to determine the ultimate issue of whether the statement is defamatory, but to answer the threshold question of whether the communication is reasonably susceptible of a defamatory meaning") (citation and internal quotation marks omitted).

Dr. Perrone has grouped all of the Individual Defendants into one, alleging that the Individual Defendants defamed him by "intentionally mischaracterizing their decision to terminate [his] employment contract and interviews with the media, on social media, and at subsequent School Committee meetings." (¶ 145). Further, Dr. Perrone alleges that "in interviews with the media, on social media, and its subsequent School Committee Meetings, Individual Defendants intentionally portrayed [him] to the public as an oppressor who is insensitive, unprofessional, dismissive, insulting, and sexist, and as a person who fails to grasp advancing social conventions." (¶ 146). The failure to identify the exact statements of each of Individual Defendant for which this claim is based is fatal and it must be dismissed.

Second, while Dr. Perrone's allegations do not permit the Court to conduct an analysis on whether the statements are defamatory, it also appears that Dr. Perrone attempts to base his claim on the Individual Defendants' opinions. See <u>McKee v. Cosby</u>, 236 F. Supp. 3d 427, 438 (D. Mass. 2017), <u>aff'd</u>, 874 F.3d 54 (1st Cir. 2017) (stating that "[b]ecause defamation requires a false statement at its core, opinions typically do not give rise to liability") (citations and internal quotation marks omitted). Indeed, "[o]n the constitutional side, the Supreme Court—reading the First Amendment (made binding on the states through the Fourteenth)—'has hedged about defamation suits' with lots of 'safeguards

designed to protect a vigorous market in ideas and opinions.'" Pan Am Sys., Inc. v. Atl. Ne. Rails & Ports, Inc., 804 F.3d 59, 65 (1st Cir. 2015) (quoting Desnick v. Am. Broad. Co., 44 F.3d 1345, 1355 (7th Cir. 1995)). One such First Amendment limitation is that "defamatory statements are not punishable unless they are capable of being proved true or false." Pan Am Sys., 804 F.3d at 65. "Because defamation requires a false statement at its core, opinions typically do not give rise to liability since they are not susceptible" to objective verification. Piccone v. Bartels, 785 F.3d 766, 771 (1st Cir. 2015); see also Veilleux v. Nat'l Broad. Co., 206 F.3d 92, 108 (1st Cir. 2000) ("[O]nly statements that are 'provable as false' are actionable; hyperbole and expressions of opinion unprovable as false are constitutionally protected."). Moreover, the First Circuit has explained that "even a provably false statement is not actionable if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts." Riley v. Harr, 292 F.3d 282, 289 (1st Cir. 2002) (internal quotations omitted).

While "[m]erely couching a statement as an opinion … will not automatically shield the speaker from liability where the statement implies the existence of underlying defamatory facts," Piccone, 785 F.3d at 771, "defamation cannot arise where the speaker communicates the non-defamatory facts that undergird his opinion." Id. "Thus, the speaker can immunize his statement from defamation liability by fully disclosing the non-defamatory facts on which his opinion is based." Id.

There is no dispute that the facts regarding what occurred are not in dispute – Dr. Perrone sent an email that referred to the Chairperson and executive assistant of his potential employer as "ladies." Dr. Perrone has admitted as much. (Exhibit 5; see also Exhibit 6). Dr. Perrone also made extra demands for compensation. The fact that Kwiecinski or any of the Individual Defendants expressed their opinion that this was a microaggression, was discriminatory or disrespectful is an opinion, and certainly a statement of opinion based on disclosed facts. More specifically, the letter referenced in Paragraphs 50 and 51 was only sent to Dr. Perrone and therefore cannot form the basis of any defamation claim. With

respect to the allegations in Paragraph 60, there is nothing "false" contained therein. Indeed, everything contained therein is true. (ECF No. 1-3 at ¶ 33; Exhibit 2; Exhibit 5; Exhibit 6).[13] The ESC Statement also does not contain any falsehoods or bases that would differ from the arguments above. (Exhibit 6).

Finally, to the extent that the Plaintiff's claim is actually one for false light defamation or invasion of privacy, Massachusetts courts do not recognize false light claims. ELM Medical Lab, Inc. v. RKO Gen., Inc., 403 Mass. 779, 787 (1989), abrogated on other grounds, United Truck Leasing Corp. v. Geltman, 406 Mas. 811 (1990); Fox Tree v. Harte–Hanks Communications, Inc., 398 Mass. 845, 848-849 (1986).

### 3. The Plaintiff Cannot Prove Actual Malice; Alternatively, the Individual Defendants Are Entitled To Immunity Based On A Conditional Privilege As Public Officials.

The Plaintiff is "required to allege sufficient facts to establish that: (1) [the defendant] made a statement concerning [him] to a third party; (2) the statement was defamatory such that it could damage [his] reputation in the community; (3) [the defendant] was at fault for making the statement; and (4) the statement caused [him] to suffer economic loss or was actionable without economic loss." Edwards v. Commonwealth, 477 Mass. 254, 262-263 (2017) (citing Ravnikar v. Bogojavlensky, 438 Mass. 627, 629-630 (2003)). "In addition, as a public figure, [the Plaintiff] is required to allege that [the defendant] made a false and defamatory statement with knowledge that it was false or reckless disregard of its falsity." Id.[14] Alternatively, "[s]tatements made by public officials while performing their official

---

[13] In the email, Dr. Perrone wrote:

> P.S. Please accept my sincere apologies for the delay in answering my phone on the night of 3/23. I was exhausted by the intensity of the day's activities and stayed up until 10:15 before falling asleep. I thought I had my phone on "ring" but failed to realize that it was not! At least we all have a "funny" story to tell of the EPD doing a wellness check on me and me calling you after midnight on 3/24!!

(Exhibit 2).

[14] A person becomes a limited purpose public figure when he "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 13 (1st Cir. 2011) (quoting Gertz v. Welch, 418 U.S. 323, 351 (1974)). The First Circuit uses a two-pronged test to determine whether a defamation plaintiff fits the limited purpose public figure category. First, it must be shown that "persons actually were discussing some specific question ... [and] a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." Id. at 13 (citation and internal quotation marks

duties are conditionally privileged…. The threat of … suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues." Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 630-631 (2012); Edwards, 477 Mass. at 263 & n.9. A plaintiff may only maintain an action for defamation if he or she can demonstrate that the public official acted with actual malice. "The actual malice standard requires the [plaintiff] to prove that the statement was made either with knowledge that it was false, or with reckless disregard as to whether it was false." Edwards, 477 Mass. at 263. Thus, to survive a motion to dismiss, a plaintiff must allege sufficient facts to establish that the public official knew the statements were false, or acted with reckless disregard to their truth or falsity. See Vigoda v. Barton, 348 Mass. 478, 485 (1965) ("where the official believes the matter to be true … and has not acted with actual malice … or with reckless indifference to the rights of the individual citizen, his conditional privilege is not abused" [citations omitted]). "Reckless disregard requires more than negligence; the plaintiff must prove that the individual making the alleged defamatory statement 'entertained serious doubts as to the truth' of the statement." Edwards, 477 Mass. at 263 (citing Murphy v. Boston Herald, Inc., 449 Mass. 42, 48 & n.8 (2007) (discussing application of actual malice requirement to defamation action brought by a judge)).

Here, there is nothing in the Complaint that supports the finding of actual malice, nor are there any allegations that negate the conditional privilege. There is no information that any statements were false. There are also no allegations of unnecessary, unreasonable or excessive publication to others. Barrows, 82 Mass. App. Ct. at 631. The ESC Statement, which more or less mirrors the minutes from the meetings, came *after* Dr. Perrone went to the media. (Exhibit 6; Exhibit 5). As such, the Plaintiff has not alleged any facts that would negate the application of the conditional privilege and, therefore, the

---

omitted). Second, "[o]nce a controversy is isolated, the critical question then becomes whether the plaintiff has attempted to 'influence the resolution' of that controversy." Id. Here, the Plaintiff was seeking a Superintendent's position, had been interviewed in open meeting, and then gave an interview to a newspaper about the issue, which resulted in nation-wide coverage.

claim should be dismissed. <u>Edwards</u>, 477 Mass. at 263.

### 4. The Individual Defendants Are Also Entitled To Protection Afforded By The Legitimate Business Interest Privilege.

"Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest." <u>Bratt v. Int'l Bus. Machines Corp.</u>, 392 Mass. 508, 512-513 (1984). Disseminating information regarding the employee's fitness to perform his job duties constitutes a legitimate business interest. <u>Id.</u> at 509. Once the defendant shows that the statements were conditionally privileged, the burden shifts to the plaintiff to show an abuse of that privilege. See <u>Foley v. Polaroid Corp.</u>, 400 Mass. 82, 95 (1987). A defendant may lose the privilege if the plaintiff proves that the defamatory information was "unnecessary, unreasonable, or excessively published." <u>Id.</u> If "the disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for the truth or falsity of the information," <u>Bratt</u>, 392 Mass. at 517, the plaintiff's burden would be met. See also <u>Martins v. Pub. Health Comm'n of Bos.</u>, 51 Mass. App. Ct. 1110, 747 N.E.2d 758 (2001).

There were obviously legitimate business interests in disseminating information about Dr. Perrone and the circumstances leading to the vote to rescind. The ESC is a public body charged with overseeing a public school department. That said, the ESC did not make any statements that would negate the conditional privilege. The initial statement does not amount to any expressed malicious motive, nor does it involve a reckless disregard for the truth, nor was it recklessly disseminated given the public nature of these contract negotiations. With respect to the ESC Statement, which was only after Dr. Perrone granted an interview to a local media outlet, which caused significant pressures on the individual members. The measured statement certainly does not negate the conditional privilege.

### H. The Individual Defendants Are Entitled to Common Law Immunity.

The Supreme Judicial Court has held that, "[a]t common law, … a public official, exercising

judgment and discretion, is not liable for negligence or other error in the making of an official decision if the official acted in good faith, without malice, and without corruption." Nelson v. Salem State College, 446 Mass. 525, 537 (2006). Here, the allegations do not rise to the level of conduct needed to negate this immunity for the Individual Defendants.

## CONCLUSION

For the reasons set forth above, the Defendants hereby request this Honorable Court to allow their Motion to Dismiss, with prejudice, as set forth herein.

Respectfully submitted,

The Defendants,
CITY OF EASTHAMPTON,
CITY OF EASTHAMPTON SCHOOL COMMITTEE,
NICOLE LACHAPELLE,
CYNTHIA KWIECINSKI, MEGAN HARVEY,
BENJAMIN HERSEY, MARIN GOLDSTEIN,

Dated: January 2, 2025

By their Attorneys,

**PIERCE DAVIS & PERRITANO LLP**

*/s/ Jeffrey J. Trapani*
Jeffrey J. Trapani, BBO #661094
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jtrapani@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on January 2, 2025.

*/s/ Jeffrey J. Trapani*
Jeffrey J. Trapani